UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------X
DANNY DONOHUE, as President of the Civil
Service Employees Association, Inc., Local
1000, AFSCME, AFL-CIO, and CIVIL SERVICE
EMPLOYEES ASSOCIATION, INC., LOCAL 1000,      1:11-CV-1530
AFSCME, AFL-CIO, and MILO BARLOW, THOMAS
JEFFERSON, CORNELIUS KENNEDY, JUDY RICHARDS,      MAD/CFH
and HENRY WAGONER, on behalf of themselves
and certain other RETIREES of the STATE OF
NEW YORK formerly in the CSEA BARGAINING UNITS,

                        Plaintiffs,

            -against-

ANDREW M. CUOMO, in his official capacity
as Governor of the State of New York,
PATRICIA A. HITE, individually, and in her
official capacity as Acting Commissioner,
New York State Civil Service Department,
CAROLINE W. AHL and J. DENNIS HANRAHAN, in
their official capacities as Commissioners
of the New York State Civil Service
Commission, ROBERT L. MEGNA, individually,
and in his official capacity as Director of
the New York State Division of the Budget,
and THOMAS P. DiNAPOLI, in his official
capacity as Comptroller of the State of
New York, JONATHAN LIPPMAN, his official
capacity as Chief Judge of the New York State
Unified Court System,

                        Defendants.
--------------------------------------------X

### MEMORANDUM OF LAW IN SUPPORT OF
### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

                    ERIC T. SCHNEIDERMAN
                    Attorney General of the
                     State of New York
                    Attorney for Defendants
                    The Capitol
                    Albany, New York 12224
                    (518) 776-2624
                    richard.lombardo@ag.ny.gov

## **Table of Contents**

PRELIMINARY STATEMENT......................................................................1

STATEMENT OF FACTS.........................................................................3

ARGUMENT....................................................................................4

    POINT I..................................................................................4

        DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON
        PLAINTIFFS' CONTRACT CLAUSE CLAIM (FIRST CAUSE OF
        ACTION).............................................................................4

            A. No contractual relationship exists as to the
               allegedly impaired term because there is no
               contractual term promising the perpetual
               continuation of premium contribution rates
               at a specific level...............................................5

            B. Even if plaintiffs do have a vested right to a
               perpetually fixed premium contribution rate,
               they can demonstrate no substantial impairment
               of that right.....................................................9

            C. L. 2011 Ch. 491 served a legitimate public
               purpose and the means chosen to accomplish
               that purpose were reasonable and necessary......12

    POINT II.................................................................................16

        DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON
        PLAINTIFFS' BREACH OF CONTRACT CLAIM(SECOND CAUSE OF
        ACTION)............................................................................16

            A. Because there is no viable federal cause of
               action, the court should decline to exercise
               jurisdiction over plaintiffs' state law breach
               of contract claim.................................................17

            B. The court should dismiss the breach of
               contract claim in any event because it has no
               merit..................................................................18

    POINT III................................................................................19

        DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON
        PLAINTIFFS' DUE PROCESS CLAIMS (THIRD AND FIFTH CAUSES
        OF ACTION).........................................................................19

i

A. Plaintiffs do not have a constitutionally protected property right in a perpetually fixed premium contribution rate.............................19

B. Plaintiffs cannot show they were denied due process because they had an adequate state court remedy of which they failed to avail themselves...............................................23

C. Plaintiffs' New York State-based due process claim must be dismissed because the State Constitution does not provide for a private right of action where other remedies, including 42 U.S.C. §1983, are available............................25

POINT IV......................................................................27

DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' CLAIM THAT DEFENDANTS HITE AND MEGNA VIOLATED ARTICLE III, § 1 OF THE NEW YORK CONSTITUTION (SIXTH CAUSE OF ACTION)............................................27

POINT V.........................................................................29

DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' CLAIM OF A VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. §1983 (SEVENTH CAUSE OF ACTION)..............................29

POINT VI........................................................................30

DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' CONTRACT RIGHTS ESTABLISHED BY STATUTE AND LONGSTANDING PRACTICE CLAIM (EIGHTH CAUSE OF ACTION)...30

A. Civil Service Law §167(1) does not create a contract right..............................................................30

B. Plaintiffs' "past practice" claim fail because a past practice is merely parol evidence and does not create a contractual right.......................31

CONCLUSION........................................................................33

## Table of Authorities

**Page(s)**

**CASES**

*Aeneas McDonald Police Benevolent Association v. City of Geneva,*
92 N.Y.2d 326 (1998) ........................................ 31–32

*AFSCME, Local 264 v. Tobe,*
2011 U.S. Dist. LEXIS 145728 (W.D.N.Y.) .................... 21

*Barker v. Time Warner Cable, Inc.,*
83 A.D.3d 750 (2d Dept. 2011) .............................. 18

*Board of Regents v. Roth,*
408 U.S. 564 (1972) ........................................ 20

*Brzak v. United Nations,*
597 F.3d 107 (2d Cir. 2010) ................................ 17

*Buffalo Teachers Federation v. Tobe,*
464 F.3d 362 (2d Cir. 2006) ....................... 5, 12–13

*Canzona v. Atanasio,*
118 A.D.3d 837 (2d Dept. 2014) ............................ 18

*City of Oklahoma City v. Tuttle,*
471 U.S. 808 (1985) ........................................ 29

*Cook v. City of Binghamton,*
48 N.Y.2d 323 (1979) ....................................... 31

*Costello v. Town of Fairfield,*
811 F.2d 782 (2d Cir. 1987) ................................ 21

*Donohue v. Paterson,*
715 F. Supp. 2d 306 (N.D.N.Y. 2010) ................... 14–16

*Energy Reserves Group v. Kansas Power & Light Co.,*
459 U.S. 400 (1983) ................................. 4, 9, 12

*General Motors Corp. v. Romein,*
503 U.S. 181 (1992) ......................................... 4

*Gilmore v. Bouboulis,*
2016 U.S. Dist. LEXIS 115315 (N.D.N.Y.) ............... 23–24

*Glass v. New York*,
   2017 U.S. Dist. LEXIS 63827 (N.D.N.Y.) ...................... 26

*Gounden v. City of New York*,
   2015 U.S. Dist. LEXIS 134887 (E.D.N.Y.) ..................... 26

*Hellenic American Neighborhood Action Committee v.
   City of New York*,
   101 F.3d 877 (2d Cir. 1996) ............................ 23-24

*Home Building & Loan Association v. Blaisdell*,
   290 U.S. 398 (1934) ......................................... 4

*Horton v. Board of Education of the Sherburn-Earlville
   Central School District*,
   2017 U.S. Dist. LEXIS 60719 (N.D.N.Y.) ..................... 24

*Jackson v. Roslyn Board of Education*,
   652 F. Supp. 2d 332 (E.D.N.Y. Sept. 3, 2009) .............. 21

*Jordan v. County of Chemung*,
   2017 U.S. Dist. LEXIS 143215 (W.D.N.Y.) ................... 26

*Kirshner v. United States*,
   603 F.2d 234 (2d Cir. 1978) ............................ 4, 13

*Kolbe v. Tibbetts*,
   22 N.Y.3d 344 (2013) ........................................ 6

*Lawrence v. Town of Irondequoit*,
   246 F. Supp. 2d 150 (W.D.N.Y. 2002) ....................... 22

*Litton Financial Printing Division v. NLRB*,
   501 U.S. 190, [1991] ........................................ 6

*Marcic v. Reinauer Transportation Companies*,
   397 F.3d 120 (2d Cir. 2005) ............................... 10

*Matter of Retired Public Empl. Assoc., Inc. v. Cuomo*,
   2012 N.Y. Misc. LEXIS 5714 (N.Y. Sup. Ct. Dec. 17,
   2012) ..................................................... 28

*Miller v. New York City Department of Education*,
   622 Fed. Appx. 38 (2d Cir. 2015) .......................... 21

*Myers v. Wollowitz*,
   1995 U.S. Dist. LEXIS 5297 (N.D.N.Y.) ("42 U.S.C.
   §1983 is the vehicle by which individuals may seek
   redress for alleged violations of their
   constitutional rights.").................................. 26

*New York State Court Officers Association v. Hite*,
   851 F. Supp. 2d 575 (S.D.N.Y. 2012)....................... 30

*Pineman v. Fallon*,
   662 F. Supp. 1311 (D. Conn. 1987) . Civil.................. 22

*Riano v. Town of Schroeppel*,
   2015 U.S. Dist. LEXIS 104328 (N.D.N.Y.) ("New York
   State statutes provide an opportunity for full and
   complete judicial review of all administrative
   determinations. The availability of such judicial
   review satisfies the dictates of procedural due
   process.").............................................. 23

*S & D Maintenance Co., Inc. v. Goldin*,
   844 F.2d 962 (2d Cir. 1988)............................... 20

*Sanitation & Recycling Industry, Inc. v. City of New
   York*,
   107 F.3d 985 (2d Cir. 1997)................................ 9

*Sykes v. James*,
   13 F.3d 515 (2d Cir. 1993)................................ 29

*Umbach v. Carrington Investment Partners*,
   851 F.3d 147 (2d Cir. 2017)............................... 10

*United Mine Workers of America v. Gibbs*,
   383 U.S. 715 (1966)....................................... 17

*Waltz v. Board of Education of the Hoosick Falls
   Central School District*,
   2013 U.S. Dist. LEXIS 129089 (N.D.N.Y.)............ 19, 23, 25

CONSTITUTIONS

Fourteenth Amendment ....................................... 26

New York Constitution
   Article III, § 1......................................... 2, 27

New York State constitution ............................... 2, 25

New York State Constitution
    Article I § 6.............................................25

United States Constitution
    Article I § 10 Contracts Clause.........................1, 4

**STATE STATUTES**

Civil Service Law 167(1) ....................................28

Civil Service Law
    § 167................................................30
    § 167(1)........................................passim
    § 167(1)(a).........................................28
    § 167(8)  (L. 2011 Ch. 491)....................passim
    § 167(8)'s.......................................28, 30

**FEDERAL STATUTES**

42 U.S.C.
    § 1983..........................................passim

**RULES**

Local Rule 7.1 ..............................................3

**MISCELLANEOUS AUTHORITIES**

New York Civil Practice Law Article 78 .................2, 23-25

## PRELIMINARY STATEMENT

Plaintiffs are a collective bargaining representative and retired former members of the Civil Service Employees Association, Inc. ("CSEA") who chose to retire prior to the negotiation of the collective bargaining agreement ("CBA") that succeeded the 2007-11 CSEA CBA.  In this action, plaintiffs challenge defendants' extension to retirees of the negotiated increase in the percentage of contributions that State employees pay for health insurance benefits, which was authorized by a 2011 amendment to Civil Service Law §167(8) (L. 2011 Ch. 491).

The first cause of action alleges that the increase in the percentage of the health insurance premium contribution paid by retirees violated the Contracts Clause of Article I §10 of the United States Constitution.  The court should dismiss this cause of action because the collective bargaining agreements do not establish a contractual right to a perpetually fixed health insurance premium contribution rate.

The second cause of action alleges that the increase in the percentage of the health insurance premium contribution paid by retirees breached plaintiffs' contractual rights under the 2007-11 CBA.  The court should decline to exercise jurisdiction over this state law claim, given that there is no viable federal

cause of action.  This claim should be dismissed in any event, because it lacks merit.

The third and fifth causes of action allege that the retirees' premium contribution increase violated plaintiffs' right to due process under the Federal and State Constitutions, respectively.  These claims, too, fail because plaintiffs do not have a property interest in a perpetually fixed premium contribution rate and the New York State constitution does not provide for the cause of action plaintiffs assert.

The fourth causes of action alleges that defendant Hite lacked authority to administratively extend the premium shift. This appears to have been brought pursuant to Article 78 of the New York Civil Practice Law and Rules and has been dismissed. See docket no. 19 at 19-22.

The sixth cause of action alleges that defendants Hite and Megna violated Article III §1 of the State Constitution.  The court should decline to exercise jurisdiction over this state law claim which, in any event, has no merit because defendants Hite and Megna acted in accordance with the express terms of Civil Service Law §167(8).

The seventh cause of action, which purports to be a separate cause of action pursuant to 42 U.S.C. §1983, is

duplicative of the Contracts Clause and federal Due Process claims and must be dismissed.

The eighth cause of action alleges that the retirees' premium contribution increase violated plaintiffs' contract rights established by statute and longstanding practice.  It is well established that Civil Service Law §167(1) did not bestow any contractual rights on plaintiffs.  And the claimed past practice did not exist.  In any event, this claim must be dismissed because a past practice is merely a form of parol evidence and does not independently establish a contractual right.

Accordingly, defendants are entitled to summary judgment on all seven of the remaining causes of action.

## STATEMENT OF FACTS

For a complete statement of the relevant facts, see the accompanying statement of material facts pursuant to Local Rule 7.1 (hereinafter "7.1 statement"); the accompanying declarations of Patricia Hite, David Boland, Darryl Decker, Priscilla Feinberg, Dominic Colafati, and Helena Lynch; and Exhibits "1" through "18" submitted therewith.

3

**ARGUMENT**

**Point I**

**DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT
ON PLAINTIFFS' CONTRACT CLAUSE CLAIM (FIRST
CAUSE OF ACTION)**

Article I §10 of the United States Constitution provides
that "[n]o State shall... pass any Law... impairing the
Obligation of Contracts...."  This prohibition, however, "is not
an absolute one and is not to be read with literal exactness
like a mathematical formula."  Home Building & Loan Association
v. Blaisdell, 290 U.S. 398, 428 (1934).  A State may take
necessary measures in pursuit of legitimate State goals without
bar by the contract clause even though some contract rights may
to some degree be modified or affected.  Kirshner v. United
States, 603 F.2d 234, 239 (2d Cir. 1978).

The first step in a contract clause analysis asks "whether
the state law has, in fact, operated as a substantial impairment
of a contractual relationship."  Energy Reserves Group v. Kansas
Power & Light Co., 459 U.S. 400, 411 (1983).  In this regard,
there are three factors that the court should consider: (1)
whether a contractual relationship exists; (2) whether a change
in law impairs that contractual relationship; and (3) whether
the impairment is substantial."  General Motors Corp. v. Romein,
503 U.S. 181, 186 (1992).  A State law that impairs a

4

contractual obligation will not be deemed unconstitutional so long as: (1) it serves a demonstrated legitimate public purpose, such as remedying a general social or economic problem; and (2) the means chosen to accomplish the public purpose is reasonable and necessary.  Buffalo Teachers Federation v. Tobe, 464 F.3d 362, 368 (2d Cir. 2006).

## A. No contractual relationship exists as to the allegedly impaired term because there is no contractual term promising the perpetual continuation of premium contribution rates at a specific level.

In order for a contract term to be substantially impaired, the contract term in question must exist in the first instance. As set forth below, the contractual term that plaintiffs allege was impaired does not exist.

Plaintiffs assert that Article 9 of CSEA's 2007-11 CBA, and similar provisions of prior CBAs going back to 1983, provided plaintiffs with a vested right to a perpetually fixed premium contribution rate for their health insurance coverage.  Second amended complaint ¶¶84, 109.  Plaintiffs have no such right. However, to the extent that any rights vested, the only right provided to the plaintiffs is to the health insurance coverage that was in effect at the time of their retirement, not to any specific premium contribution amount.

As a general rule, "contractual obligations will cease, in the ordinary course, upon termination of the bargaining

agreement...."  Only "[r]ights which accrued or vested under the
agreement will, as a general rule, survive termination of the
agreement."  Litton Financial Printing Division v. NLRB, 501
U.S. 190, 207, [1991]).  The court "must look to well
established principles of contract interpretation to determine
whether the parties intended that the contract give rise to a
vested right."  Kolbe v. Tibbetts, 22 N.Y.3d 344, 353 (2013).[1]

Section 9.1 of the 2007-09 CBA between CSEA and the State
provides that:

> The State shall continue to provide all the forms and
> extent of coverage as defined by the contracts and in
> force on March 31, 2007 with the State's health
> insurance carriers unless specifically modified by
> this Agreement.

7.1 statement ¶25 (emphasis added).

As is clear from the language of this section of the 2007-
11 CBA, the State promised the continuation of coverage.  7.1
Statement ¶25.  The introductory language merely establishes
that the coverage in the previous CBA, to the extent it is
defined in the contracts between the State and the insurance
carriers, will continue unless altered through negotiations.
7.1 statement ¶25.  Accordingly, what is continued are the

---

[1]In Kolbe, the unambiguous language upon which plaintiffs based
their claim to a vested right to unchangeable retirement benefits read
as follows: "[t]he coverage provided shall be the coverage which is in
effect for the unit at such time as the employee retires."  22 N.Y.3d
at 353.

benefits defined in the contracts with the insurance carriers. 7.1 statement ¶26.

To the extent "continue" is read to mean continuation after the expiration of the CBA, the question then becomes what "coverage" is to be continued.  The answer is the coverage that is defined in the "contracts" (plural) "with the state health and dental insurance carriers."  The State has promised to continue to provide "coverage", not as defined in the prior CBA, but in the State's contracts with the insurance carriers that provide coverage to State employees.  Premium contribution rates are not a "forms and extent of coverage" under the New York State Health Insurance Plan.  The "forms and extent of coverage" is defined in the contracts with the health insurance carriers. 7.1 statement ¶¶18, 26, 28, 30, 32, 34, 26, 40.  Those contracts do not define premium contribution terms.  7.1 statement ¶41. Therefore, the term "forms and extent of coverage" cannot include within its scope premium contribution rates.

The contracts between the State and the health insurance carriers contain no provision setting forth the premium contribution rates of employees or retirees.  7.1 statement ¶41. Accordingly, to the extent that retirees can show that they have any vested right, such right would be only to continued coverage to the extent that coverage is defined in the State's contracts

7

with the health insurance carriers in effect on March 31, 2007.
There is no guarantee of a perpetually fixed contribution rate.

Plaintiffs' claim necessarily requires an argument that the
"contracts" mentioned in section 9.1 refers to the CBA that was
in effect on March 31, 2007.  This is an unworkable
interpretation of section 9.1.  First, section 9.1 plainly
refers to "contracts", not a single contract.  Second, the 2007-
11 CBA and all of its predecessors refers to themselves as the
"Agreement", not the "contract".  7.1 statement ¶¶25, 27, 29,
31, 33, 35, 37, 39.  There is no plausible reason why section
9.1 of the 2007-11 CBA would diverge from the language that had
been used for decades and refer to a prior CBA as "the
contracts" rather than an "Agreement".

The sections of the 2007-11 CBAs that set forth the
specific premium contribution rates also support the
interpretation that the CBAs do not guarantee a perpetual
specific premium contribution rate.  Specifically, section
9.23(a) provides that "[t]he unremarried spouse of an employee,
who retires after April 1, 1979, with ten or more years of
active State service and subsequently dies, shall be permitted
to continue coverage in the health insurance program with
payment at the same contribution rates as required of active
employees."  7.1 statement ¶44.  This provision demonstrates

8

that, when a specific contribution rate is meant to be guaranteed into retirement, it is set forth expressly in the contract.  No such contribution rates are referred to in section 9.1.

Accordingly, plaintiffs have no vested right to a perpetually fixed premium contribution rate for their health insurance coverage.  Since no contractual relationship exists, plaintiffs' Contracts Clause claim fails.

**B. Even if plaintiffs do have a vested right to a perpetually fixed premium contribution rate, they can demonstrate no substantial impairment of that right.**

Should the court find that plaintiffs have a vested right to a perpetually fixed premium contribution rate for their health insurance coverage, plaintiffs' Contract Clause claim should, nonetheless, be dismissed because plaintiffs can demonstrate no substantial impairment of that right.

The primary consideration in determining whether a contract impairment is substantial is the extent to which reasonable expectations under the contract have been disrupted.  Energy Reserves Group, Inc. v. Kansas Power & Light Co., 459 U.S. 400, 411 (1983).  The impairment of a contractual relationship is greatest where the challenged legislation was wholly unexpected. Sanitation & Recycling Industry, Inc. v. City of New York, 107 F.3d 985, 993 (2d Cir. 1997).  Defendants submit that plaintiffs

9

could have no reasonable expectation that the premium contribution rate for their health insurance coverage that was in effect at the time of their retirement would never change throughout their lives.

As demonstrated above, any expectation of a perpetually fixed contribution rate in retirement was patently unreasonable according to the plain language of the CBAs.  As demonstrated in Point I(A), those agreements guaranteed that the plaintiffs would receive the health insurance coverage that was in effect at the time of their retirement, but that the State's obligation to provide the premium contribution rates set forth in the CBA in effect at the time of retirement ceased upon the termination of the agreement.  Thus, the only reasonable expectation plaintiffs could have is that their contribution rates will be the same as those of current employees.

While the court may consider past practices in interpreting an ambiguous provision of a CBA (Marcic v. Reinauer Transportation Companies, 397 F.3d 120, 131-32 (2d Cir. 2005)), there is no place for extrinsic evidence here, where the terms of sections 9.1 and 9.23(a) are unambiguous (Umbach v. Carrington Investment Partners, 851 F.3d 147, 157-58 (2d Cir. 2017)).  Moreover, even if the court were to consider past practices, there is no basis for plaintiffs' assertion that,

"since the enactment of Chapter 14 of the Laws of 1983, the State's longstanding practice and established course of conduct further establishes the parties' intent and the State's contractual obligation to provide for the contribution of health insurance benefits for retired State employees, including a continuation of the State contribution rates in effect at the time a State employee retires..." (second amended complaint ¶152).

L. 1983 Ch. 14 could not have given the plaintiffs a reasonable expectation that their health insurance premium contribution rates would never increase (second amended complaint ¶¶151-53).  On the contrary, the provision in the law guaranteeing that those who retired before January 1, 1983 would pay no contribution was specifically negotiated on a unique occasion approximately 28 years before this action was commenced.  See Governor's Program Bill memorandum, contained in Exhibit "17" submitted herewith; 7.1 statement ¶¶51-53.  It is true that, between 1983 and 2011, there was no change in the contribution rate paid by retirees.  However, during that period, the State made no change to the contribution rate paid by employees as well.  7.1 statement ¶42.  Thus, all that this establishes is that, during the period in question, the need

11

never arose to make any changes to the premium contribution rates.

Finally, plaintiffs' purported expectation that their health insurance premium contributions would never increase was neither reasonable nor realistic given the constant, unrelenting increases in health insurance costs.

## C. L. 2011 Ch. 491 served a legitimate public purpose and the means chosen to accomplish that purpose were reasonable and necessary.

Should the court find that plaintiffs have a vested right to a perpetually fixed premium contribution rate for their health insurance coverage and that they suffered a substantial impairment of that right, plaintiffs' Contracts Clause claim should, nonetheless, be dismissed since L. 2011 Ch. 491 served a legitimate public purpose and the means chosen to accomplish that purpose were reasonable and necessary.

Even if a State regulation constitutes a substantial impairment, a Contracts Clause violation may not be found if a law "serves a legitimate purpose such as remedying a general social or economic problem and the means chosen to accomplish this purpose are reasonable and necessary." Buffalo Teachers Federation, 464 F.3d at 368. See also Energy Reserves Group, Inc. v. Kansas Power and Light Co., 459 U.S. 400, 412-13 (1983). In order for a law that impairs a State contract to be

12

reasonable and necessary, it must be shown that the State did not: (1) consider impairing the contract on par with other policy alternatives; (2) impose a drastic impairment when an evident and more moderate course would serve its purpose equally well; or (3) act unreasonably in light of the surrounding circumstances. Buffalo Teachers Federation, 464 F.3d at 371.

The Legislature enacted L. 2011 Ch. 491 in an effort to close a multi-billion budget gap caused by the Great Recession. 7.1 statement ¶¶54-57. Thus, it cannot be seriously disputed that the Legislature's public purpose in enacting this law was legitimate. See Buffalo Teachers Federation, 464 F.3d at 369 ("[C]ourts have often held that the legislative interest in addressing a fiscal emergency is a legitimate public interest."); Kirshner v. United States, 603 F.2d 234, 239 (2d Cir. 1978), cert. denied, 442 U.S. 909 (1979) (no Contracts Clause violation where the State's purpose in enacting legislation modifying contract rights was to protect the fiscal integrity of the City of New York).[2]

That the means chosen to accomplish the legitimate public purpose of addressing this catastrophic fiscal emergency were

---

[2]In Buffalo Teachers Federation, the court noted that "[i]t cannot be the case, however, that a legislature's only response to a fiscal emergency is to raise taxes. 464 F.3d at 372 (emphasis in original).

reasonable and necessary is demonstrated by the fact that the challenged statute was enacted after the Division of the Budget had developed and considered numerous cost savings proposals. Moreover, the minimal reduction in the State's contribution to health insurance premiums was but one part of a wide range of measures adopted by the State which allocated savings all across the State's functions without disproportionally affecting any particular State activity.  7.1 statement ¶¶57-80.

Of course, no agency wants the funding for any of its programs to be reduced.  However, in order to close the multi-billion budget gap, the State had to make hard choices and, accordingly, was forced to cut costs all across the board. Since a wide range of State operations was subject to budget cuts, it cannot be said that a more moderate course would have served the State's legitimate public purpose of reducing the mounting deficit equally well.

Finally, to the extent plaintiffs seek to rely on Donohue v. Paterson, 715 F. Supp. 2d 306 (N.D.N.Y. 2010), the court should not be persuaded.  The only common fact between Donohue and this case is the undisputed fiscal emergency.  On every other point, the two cases are starkly distinct.  The Donohue court considered the unpaid furloughs and a wage and benefits freeze to be "drastic".  Id. at 322.  Donohue involved

14

admittedly "extraordinary actions", namely, the "massive
furloughing and wage freeze of tens of thousands of workers",
which included a "permanent 20% loss in salary and wages".  Id.
at 315-16.  At issue here is a much more modest measure, a
narrowly tailored percentage increase solely to health insurance
premium contributions, with the eighty-plus percent balance
still paid by the State.  There is no reasonable comparison
between the measures at issue in Donohue and the narrow, modest
premium contribution shift at issue here.

Moreover, of paramount importance to the Donohue court was
the lack of legislative endorsement for the drastic measures.
See, e.g., id. at 322-23.  No such concerns are implicated here,
where L. 2011 Ch. 491 was duly enacted by the Legislature
according to the "ordinary course of [the State's]
constitutional process".  Donohue, 715 F. Supp. 3d. at 321.  In
Donohue, the provisions were imposed by extender bills, on a
"take-it-or-leave" it basis, over the Legislature's emphatic
opposition (id. at 323) and the Senate "denie[d] the legitimacy
of the contractual impairments" created by the extender bills
(Id. at 320).  The measures "were the sudden and sole work of
the Executive and were proposed in a manner that largely
precluded legislative deliberation." Id.  Here, the premium
contribution shift was authorized by duly enacted legislation.

In <u>Donohue</u>, the court viewed the record as lacking a sufficient showing of "consideration of needs and alternatives." <u>Id</u>. at 324.  Here, the premium shift was but one of numerous proposals considered and enacted.  7.1 statement ¶¶57-80.  Unlike in <u>Donohue</u>, here "the Executive and Legislative bodies have, in their respective capacities, assessed what actions best serve the public good."  <u>Id</u>. at 321.  In <u>Donohue</u>, the court found that the State did not show that it lacked reasonable alternatives.  <u>Id</u>. at 322-23.  Here, defendants have shown that reasonable alternatives have been exhausted.  The premium shift was but one of numerous necessary measures that affected a range of State activities.  7.1 statement ¶¶57-80.

Further, in <u>Donohue</u>, there was no question that the measures enacted were expressly "in contravention of a number of" collective bargaining agreements.  <u>Id</u>. at 314.  Here, the imposition of the premium contribution shift is not in contravention of any identifiable contractual language.

### Point II

**DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT
ON PLAINTIFFS' BREACH OF CONTRACT CLAIM
(SECOND CAUSE OF ACTION)**

Defendants are entitled to summary judgment on plaintiffs' breach of contract claim (second cause of action).  First, the court should decline to exercise pendent jurisdiction over

16

plaintiffs' state law breach of contract claim.   Second, if the court exercises jurisdiction, that claim should be dismissed in any event because it has no merit.

## A. Because there is no viable federal cause of action, the court should decline to exercise jurisdiction over plaintiffs' state law breach of contract claim.

It is well settled that, where a plaintiff's federal claims are dismissed before trial, the court should not exercise jurisdiction over any pendent state law claims and those claims should be dismissed as well.  Brzak v. United Nations, 597 F.3d 107, 113-14 (2d Cir. 2010).  See also United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial... the state claims should be dismissed as well.").

Although the decision whether to exercise pendent jurisdiction is within the discretion of the court, "[i]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors... will point toward declining to exercise jurisdiction over the remaining state-law claims." Keady v. Nike, Inc., 23 Fed. Appx. 29, 32 (2d Cir. 2001) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)).

17

## B. The court should dismiss the breach of contract claim in any event because it has no merit.

The essential elements of a State law cause of action for breach of contract are "the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of his or her contractual obligations, and damages resulting from the breach."  A party alleging a breach of contract must "demonstrate the existence of a... contract reflecting the terms and conditions of their... purported agreement."  Canzona v. Atanasio, 118 A.D.3d 837, 838-39 (2d Dept. 2014).  The plaintiff must also "identify the provisions of the contract that were breached."  Barker v. Time Warner Cable, Inc., 83 A.D.3d 750, 751 (2d Dept. 2011).

For the reasons set forth above demonstrating that there was no impairment of any contract, see supra, Point I(A), there has been no breach of contract because there is no contractual term guaranteeing a perpetual premium contribution rate.  Accordingly, even if the court exercises jurisdiction over plaintiffs' state law breach of contract claim, plaintiffs' failure to support the first essential element of that claim -- the existence of a contract -- requires dismissal of the second cause of action.

<u>**Point III**</u>

**DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT
ON PLAINTIFFS' DUE PROCESS CLAIMS (THIRD AND
FIFTH CAUSES OF ACTION)**

Defendants are entitled to summary judgment on plaintiffs' Due Process claims (third and fifth causes of action) since: plaintiffs do not have a constitutionally protected property right in a perpetually fixed premium contribution rate; plaintiffs had an adequate state court remedy of which they failed to avail themselves; and the State Constitution does not provide for a private right of action where other remedies, including 42 U.S.C. §1983, are available.

**A. Plaintiffs do not have a constitutionally protected property
   right in a perpetually fixed premium contribution rate.**

A plaintiff asserting a due process violation must demonstrate that "he or she possesses a liberty or property interest protected by the Constitution or federal statutes" and that "he or she was deprived of a property or liberty interest without having received notice and an opportunity to be heard regarding the deprivation." <u>Waltz v. Board of Education of the Hoosick Falls Central School District</u>, 2013 U.S. Dist. LEXIS 129089, *19 (N.D.N.Y.). As demonstrated in Point I, plaintiffs have not identified a term in any of the CBAs guaranteeing premium contributions at a fixed rate in perpetuity. However, even if any of the CBAs contained such a

19

term, that term still would not create a constitutionally protected property right.

As the Supreme Court has explained, "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."  Board of Regents v. Roth, 408 U.S. 564, 577 (1972).  The Second Circuit has warned against an expansive reading of "entitlement" and against affording due process protections to all public contract rights. See S & D Maintenance Co., Inc. v. Goldin, 844 F.2d 962, 966 (2d Cir. 1988) ("If the concept of 'entitlement' were [applied to all public contractual rights], federal courts could be asked to examine the procedural fairness of every action by a state alleged to be in breach of its contracts.").  The Second Circuit went on to explain that, in the cases where a public contract term is found to create a property interest:

> the Due Process Clause is invoked to protect something
> more than an ordinary contractual right.  Rather,
> procedural protection is sought in connection with a
> state's revocation of a status, an estate within the
> public sphere characterized by a quality of either
> extreme dependence in the case of welfare benefits, or
> permanence in the case of tenure, or sometimes both,
> as frequently occurs in the case of social security
> benefits.

Id. (emphasis in original).

20

Plaintiffs do not have a property interest in the difference between the premium contribution they paid previously and the percentage they currently pay (second amended complaint ¶¶109-110). Rather, that differential is squarely within the type of benefit that courts have found do not constitute property rights. See Costello v. Town of Fairfield, 811 F.2d 782 (2d Cir. 1987) (finding no constitutionally protected property interest in alleged contractual increase in municipal retirement benefits, explaining, "[a] contract dispute... does not give rise to a cause of action under section 1983"); Miller v. New York City Department of Education, 622 Fed. Appx. 38, 39 (2d Cir. 2015) (finding no property interest in specific disciplinary procedures in collective bargaining agreement); AFSCME, Local 264 v. Tobe, 2011 U.S. Dist. LEXIS 145728, *21-22 (W.D.N.Y.) (finding no property interest in contractual wage increases).

Only where a benefit has been denied entirely have courts found a property interest premised on a benefit conferred in a public contract. See Jackson v. Roslyn Board of Education, 652 F. Supp. 2d 332, 341-43 (E.D.N.Y. Sept. 3, 2009) (finding a property right where plaintiff was denied disability retirement benefits and distinguishing cases involving specific types of benefits). Rather, courts have consistently found that there is

21

no constitutionally guaranteed right to a particular level or type of health care benefit in retirement.  See, e.g., Lawrence v. Town of Irondequoit, 246 F. Supp. 2d 150, 156-57 (W.D.N.Y. 2002).

To the extent that plaintiffs rest their property interest argument on Civil Service law §167(1), prior to the amendments to Civil Service Law §167(8), their argument fails.  Plaintiffs' argument requires the court to find that the legislature may not amend statutes that set forth particular terms of government benefits.  The court should decline this invitation.  See Pineman v. Fallon, 662 F. Supp. 1311, 1318 (D. Conn. 1987) ("[G]enerally courts have sought to avoid interpreting statutory benefit programs as waiving the exercise of sovereign power to amend the statute in the future.").  Civil Service Law §167(1) simply implemented collectively bargained terms (see Governor's Program Bill memorandum, contained in Exhibit "15" submitted herewith), none of which applied to retirees.  The statute did not confer any rights.

Accordingly, plaintiffs do not have a constitutionally protected property right in a perpetually fixed premium contribution rate.

22

**B. Plaintiffs cannot show they were denied due process because they had an adequate state court remedy of which they failed to avail themselves.**

Even if plaintiffs have identified a deprivation of a property interest (which they have not), they still have no due process claim because they had an available post-deprivation remedy, which satisfies all due process requirements.  It is well established that:

> Article 78 of the CPLR provides an adequate post-deprivation procedure to satisfy the requirements of constitutional due process where the deprivation of a property interest... arises from random and unauthorized conduct of a government actor rather than from established state procedures.

Gilmore v. Bouboulis, 2016 U.S. Dist. LEXIS 115315, *37 (N.D.N.Y.).  See also Hellenic American Neighborhood Action Committee v. City of New York, 101 F.3d 877, 882 (2d Cir. 1996) ("[T]here is no constitutional violation (and no available §1983 action) when there is an adequate state postdeprivation procedure to remedy a random, arbitrary deprivation of property or liberty." (citing Zinermon v. Burch, 494 U.S. 113, 132 (1990))); Riano v. Town of Schroeppel, 2015 U.S. Dist. LEXIS 104328, *12 (N.D.N.Y.) ("New York State statutes provide an opportunity for full and complete judicial review of all administrative determinations.  The availability of such judicial review satisfies the dictates of procedural due process."); Waltz, 2013 U.S. Dist. LEXIS 129089, *20 ("Where

23

adequate pre-deprivation and post deprivation remedies are available under state law, a party may not prevail on his due process claim.").

Plaintiffs could have availed themselves of a remedy by commencing an Article 78 proceeding in state court, which would have had jurisdiction over such a claim if it had been timely filed.  Plaintiffs could have asserted their due process claim in an Article 78 proceeding, which "provides a hearing and means of redress for petitioners and, in such a proceeding, constitutional issues can be decided."  Horton v. Board of Education of the Sherburn-Earlville Central School District, 2017 U.S. Dist. LEXIS 60719, *11 (N.D.N.Y.) (citing Hellenic, 101 F.3d at 881).  That plaintiffs erroneously filed an Article 78 claim with this Court, which plainly does not have jurisdiction over such a claim (see docket no. 19 pp. 19-22), does not revive their due process claim.

Plaintiffs do not allege that their premium contributions were increased as a result of a systemic failure.  Since plaintiffs allege no facts that would entitled them to a pre-deprivation hearing, the only relevant question is whether an adequate post-deprivation remedy was available.  Hellenic, 101 F.3d 877, 880-82.  It unquestionably was.  See, e.g., Gilmore, 2016 U.S. Dist. LEXIS 115315, *37.

24

Accordingly, plaintiffs' failure to properly avail themselves of an Article 78 proceeding in state court is fatal to their due process claim.  See, e.g., id. at *40-41 (dismissing due process claim, concluding that the plaintiffs "failed to allege facts plausibly suggesting a due process violation arising from established state procedures, and... an Article 78 proceeding would have afforded sufficient relief to satisfy constitutional due process requirements...."); Waltz, 2013 U.S. Dist. LEXIS 129089 at *20 ("Where adequate pre-deprivation and post deprivation remedies are available under state law, a party may not prevail on his due process claim.").

**C. Plaintiffs' New York State-based due process claim must be dismissed because the State Constitution does not provide for a private right of action where other remedies, including 42 U.S.C. §1983, are available.**

In their fifth cause of action, plaintiffs purport to assert a due process claim pursuant to Article I §6 of the New York State Constitution.  Second amended complaint ¶¶133-40. However, plaintiffs' claim that the change to their premium contribution rate violates the State Constitution must be dismissed because plaintiffs are able to assert, and have asserted, a due process claim pursuant to 42 U.S.C. §1983.

It is settled among courts in all four districts within New York State that "there is no right of action under the New York State Constitution for claims that can be brought under §1983."

25

Jordan v. County of Chemung, 2017 U.S. Dist. LEXIS 143215, *60-61 (W.D.N.Y.) (quoting Dava v. City of New York, 2016 U.S. Dist. LEXIS 115639, *31-32 (S.D.N.Y.)).  See also Glass v. New York, 2017 U.S. Dist. LEXIS 63827, *12 n.9 (N.D.N.Y.) (holding that claims arising out of the State Constitution "are only permitted when it is determined that the plaintiffs have no alternative remedies that would protect their interests."); Gounden v. City of New York, 2015 U.S. Dist. LEXIS 134887, *13 n.3 (E.D.N.Y.).

Plaintiffs have unquestionably asserted causes of action pursuant to 42 U.S.C. §1983.  Their Fourteenth Amendment due process claim (third cause of action) as well as their core claim, the contract impairment claim (first cause of action) are necessarily asserted pursuant to 42 U.S.C. §1983.  See Myers v. Wollowitz, 1995 U.S. Dist. LEXIS 5297, *3 (N.D.N.Y.) ("42 U.S.C. §1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights.").[3]

To the extent that plaintiffs could assert a due process claim pursuant to the State Constitution, it would fail for the same reasons as their federal due process claim -- plaintiffs do not identify a property interest in a specific premium

---

[3]The seventh cause of action purports to be a separate claim, brought pursuant to 42 U.S.C. §1983, alleging that retirees' premium contribution increase constituted a violation of the Federal Contracts and Due Process Clauses.

26

contribution rate in perpetuity, and due process is satisfied because they had an adequate state court remedy. See supra, Point II(A)-(B). But plaintiffs' State constitutional due process claim must be dismissed at the outset because such a cause of action is not recognized.

### Point IV

**DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' CLAIM THAT DEFENDANTS HITE AND MEGNA VIOLATED ARTICLE III §1 OF THE STATE CONSTITUTION (SIXTH CAUSE OF ACTION)**

In their sixth cause of action, plaintiffs allege that defendants Hite and Megna violated Article III §1 of the State Constitution when they extended the premium contribution changes pursuant to the authority granted to them in Civil Service Law §167(8). For the reasons stated in Point II(A), the court should decline to exercise jurisdiction over this state law claim which. In any event, this claim has no merit because defendants Hite and Megna acted in accordance with the express terms of Civil Service Law §167(8).

Article III §1 states that the "Legislative power of this state shall be vested in the senate and assembly." Civil Service Law §167(8), duly enacted by the Legislature, states: "The president, with the approval of the director of the budget, may extend the modified state cost of premium or subscription charges for employees or retirees not subject to an agreement

27

referenced above and shall promulgate the necessary rules or regulations to implement this provision." Defendants Hite and Megna acted according to this express authority. 7.1 statement ¶¶45-50. Plaintiffs allege that defendants Hite and Megna violated Civil Service Law 167(1), but this argument necessarily asks the court to ignore the plain language of §167(8), which begins, "[n]otwithstanding any inconsistent provision of law...." This argument has been rejected. See Retired Public Employees Association, Inc. v. Cuomo, 2012 N.Y. Misc. LEXIS 5714, *9-10 (Sup. Ct. Albany Co. 2012) ("Phrases such as 'notwithstanding any provision of law to the contrary'... are verbal formulations frequently employed by the Legislature where it intends to preempt any other potentially conflicting statute.... Thus, where implementation of Civil Service Law §167(8)'s provisions results in different levels of contribution from those that would result from applying other laws such as Civil Service Law § 167(1)(a), Civil Service Law § 167(8)'s provisions takes precedence.").

Accordingly, defendants Hite and Megna's express authorization to act pursuant to §167(8) existed "notwithstanding" any other provision of law, including §167(1).

## Point V

**DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' CLAIM OF A VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. §1983 (SEVENTH CAUSE OF ACTION)**

The seventh cause of action purports to be a separate claim, brought pursuant to 42 U.S.C. § 1983, alleging that retirees' premium contribution increase constituted a violation of the Federal Contracts and Due Process Clauses.  This claim is duplicative of the first and third causes of action.  42 U.S.C. §1983 provides a civil claim for damages against any person who, acting under color of state law, deprives another of a right, privilege or immunity secured by the Constitution or the laws of the United States.  Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993).  §1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere.  See City of Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985).

As shown above, see supra Points I and III, defendants are entitled to summary judgment on plaintiffs' federal Contracts Clause and Due Process claims.  Accordingly, the eighth cause of action should be dismissed as well.

## Point VI

### DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' CONTRACT RIGHTS ESTABLISHED BY STATUTE AND LONGSTANDING PRACTICE CLAIM (EIGHTH CAUSE OF ACTION)

Plaintiffs' eighth cause of action should be dismissed because neither Civil Service Law §167(1) nor the purported "past practice" on which plaintiffs rely creates a contractual right.

### A. Civil Service Law §167(1) does not create a contract right.

Plaintiffs allege that a contractual right to a perpetual fixed premium contribution rate is found in pre-amendment Civil Service Law §167 (amended complaint ¶¶151-53). Plaintiffs are incorrect. In New York State Court Officers Association v. Hite, 851 F. Supp. 2d 575, 582 (S.D.N.Y. 2012), plaintiffs argued that Civil Service Law §167(1) created contractual rights and that §167(8)'s downward departure from the rates set in section §167(1) was an impairment of the union's CBA. In rejecting this claim, the court noted that courts are hesitant to read contractual rights into statutes because to do so would too easily preclude New York State from changing its policies. The court went on to state that:

> [A]bsent some clear indication that the legislature
> intends to bind itself contractually, the presumption
> is that a law is not intended to create private
> contractual or vested rights but merely declares a
> policy to be pursued until the legislature shall
> ordain otherwise.... Policies, unlike contracts, are
> inherently subject to revision and repeal, and to
> construe laws as contracts when the obligation is not
> clearly and unequivocally expressed would be to limit
> drastically the essential powers of a legislative
> body.

Id. (citing National Railroad Passenger Corp. v. Atchison, Topeka & Santa Fe Railway Co., 470 U.S. 451, 465-66 (1985)). See also Cook v. City of Binghamton, 48 N.Y.2d 323, 330 (1979) ("[C]ertain types of legislative acts, including those fixing salaries and compensation... are not presumed to create a contract....").

Accordingly, Civil Service Law §167(1) did not bestow a contractual right on plaintiffs to perpetual premium contribution rates and this claim should be dismissed.

## B. Plaintiffs' "past practice" claim fails because a past practice is merely parol evidence and does not create a contractual right.

An alleged "past practice" is merely a form of parol evidence that may assist in the interpretation of a contract -- it does not independently establish any contractual right. See Aeneas McDonald Police Benevolent Association v. City of Geneva,

92 N.Y.2d 326, 330 (1998) (explaining that party's past practice, "like any other form of parol evidence, is merely an interpretive tool and cannot be used to create a contractual right independent of some express source in the underlying agreement").  Accordingly, plaintiffs' claim that the alleged past practice of maintaining premium contribution rates into retirement created a contractual right must be dismissed. First, as explained above, see supra, Point I(B), applying the same premium contribution rates to retirees as to active employees does not establish a past practice; all that this establishes is that, during the period in question, the need never arose to make any changes to the premium contribution rates.  Second, even if applying the same premium contribution rates to retirees as to active employees constitutes a past practices, it cannot, as plaintiffs claim, independently "establish" a contractual right.  Aeneas McDonald, 92 N.Y.2d at 330.

## CONCLUSION

FOR ALL THE FOREGOING REASONS, DEFENDANTS
ARE ENTITLED TO SUMMARY JUDGMENT DISMISSING
THE SECOND AMENDED COMPLAINT.

Dated: Albany, New York
      November 3, 2017

Yours, etc.,

ERIC T. SCHNEIDERMAN
Attorney General of the
 State of New York
Attorney for Defendants
By:

RICHARD LOMBARDO
Special Litigation Counsel
Bar Roll No. 513915
The Capitol
Albany, New York 12224
(518) 776-2624
richard.lombardo@ag.ny.gov

33