# Exhibit 5

# AGREEMENT

## BETWEEN
## THE CIVIL SERVICE EMPLOYEES ASSOCIATION, INC.
### and
## THE STATE OF NEW YORK

# Administrative Services Unit


Local 1000 AFSCME, AFL-CIO



## 2003 – 2007

P 002884

ADMINISTRATIVE SERVICES UNIT
AGREEMENT

Agreement made by and between the Executive Branch of the State of New York (the "State") and The Civil Service Employees Association, Inc. ("CSEA").

## ARTICLE 1
### Recognition

The State, pursuant to the certification of the Public Employment Relations Board, recognizes CSEA as the exclusive representative for collective negotiations with respect to salaries, wages, hours and other terms and conditions of employment of employees serving in positions in the Administrative Services Unit and similar positions hereafter created. The terms "employee" or "employees" as used in this Agreement shall mean only employees serving in positions in such unit and shall include seasonal employees where so specified.

## ARTICLE 2
### Statement of Policy and Purpose

§2.1  It is the policy of the State to continue harmonious and cooperative relationships with its employees and to ensure the orderly and uninterrupted operations of government. This policy is effectuated by the provisions of the Public Employees' Fair Employment Act granting public employees the rights of organization and collective representation concerning the determination of the terms and conditions of their employment.

§2.2  The State and CSEA now desire to enter into an agreement reached through collective negotiations which will have for its purposes, among others, the following:

(a) To recognize the legitimate interests of the employees of the State to participate through collective negotiations in the determination of the terms and conditions of their employment.

(b) To promote fair and reasonable working conditions.

(c) To promote individual efficiency and service to the citizens of the State.

(d) To avoid interruption or interference with the efficient operation of the State's business.

(e) To provide a basis for the adjustment of matters of mutual interest by means of amicable discussion.

## ARTICLE 3
### Unchallenged Representation

The State and CSEA agree, pursuant to Section 208 of the Civil Service Law, that CSEA shall have unchallenged representation status for the maximum period permitted by law on the date of execution of this Agreement.

## ARTICLE 4
### Employee Organization Rights

§4.1  **Exclusive Negotiations With CSEA**
The State will not negotiate or meet with any other employee organization or employee group with reference to terms and conditions of employment of employees. When such organizations or employee groups, whether organized by the employer or employees, request meetings for any other purpose, notice shall be sent to the local CSEA representative and CSEA shall be afforded the opportunity to attend such meetings in order that CSEA may fulfill its obligation as a collective negotiating agent to represent these employees and groups of employees.

4

(b) When employees make available their personal vehicles to transport building or construction materials, the State agrees to provide, subject to the rules and regulations of the Comptroller, a supplemental mileage allowance rate of seven cents per mile for the use of personal vehicles when authorized to transport such materials.

### §8.6 Relocation Expenses

During the term of this Agreement, employees in CSEA negotiating units who qualify for reimbursement for travel and moving expenses upon transfer, reassignment or promotion (under Section 202 of the State Finance Law and the regulations thereunder) or for reimbursement for travel and moving expenses upon initial appointment to State service (under Section 204 of the State Finance Law and the regulations thereunder) shall be entitled to payment at the rates provided in the rules of the Director of the Budget 9 NYCRR Part 155.

## ARTICLE 9
## Health Insurance

§9.1 (a) The State shall continue to provide all the forms and extent of coverage as defined by the contracts in force on March 31, 2003 with the State's health insurance carriers unless specifically modified by this Agreement.

(b) The State shall provide toll-free telephone service at the Department of Civil Service Health Insurance Section for information and assistance to employees and dependents on health insurance matters.

### §9.2 Empire Plan Hospitalization

(a) The copayment for emergency room services will be $35. Effective January 1, 2005, the copayment for emergency room services will increase to $50. Charges for outpatient services covered by the hospital contract will be subject to a $25 copayment per outpatient visit. Effective January 1, 2005, charges for outpatient services covered by the hospital contract will be subject to a $30 copayment per outpatient visit. These hospital outpatient copayments will be waived for persons admitted to the hospital as an inpatient directly from the outpatient setting, and for the following covered chronic care outpatient services; chemotherapy, radiation therapy, or hemodialysis. The copayment for pre-admission testing/pre-surgical testing prior to an inpatient admission will be waived. Hospital outpatient physical therapy visits will be subject to the same copayment in effect for physical therapy visits under the Managed Physical Network Program.

(b) Effective January 1, 2005, current coverage for services provided in the outpatient department of a hospital will be expanded to include services provided in a remote location of the hospital (hospital owned and operated extension clinics). Emergency care provided in such remote location of the hospital will be subject to the $50 emergency room copayment. Outpatient services provided in such remote location of the hospital will be subject to the $30 outpatient hospital copayment.

(c) Charges for the attending hospital emergency room physician and providers who administer or interpret radiological exams, laboratory tests, electrocardiograms and pathology services directly associated with the covered hospital emergency room care for a medical emergency will be reimbursed under the participating provider or the basic medical program not subject to deductible or coinsurance when such services are not included in the hospital facility charge.

(d) The Empire Plan will continue to provide a voluntary "Centers of Excellence Program" for organ and tissue transplants. The Centers will be required to provide pre-transplant evaluation, hospital and physician service (inpatient and outpatient), transplant procedures, follow-up care for transplant-related services as determined by the Center and any other services as identified during implementation as part of an all inclusive global rate. A travel allowance for transportation and lodging will be included as part of the

P 002900

Centers of Excellence Program. The Joint Committee on Health Benefits will work with the State and Empire Plan carriers to provide ongoing oversight of this benefit.

**§9.3 Empire Plan Medical/Surgical**

The Empire Plan shall include medical/surgical coverage through use of participating providers who will accept the Plan's schedule of allowances as payment in full for covered services. Except as noted below, benefits will be paid directly to the provider at 100% of the Plan's schedule not subject to deductible, coinsurance, or annual/lifetime maximums.

(a) Office visit charges by participating providers will be subject to a $10 copay per covered individual. Effective January 1, 2005, office visit charges by participating providers will be subject to a $12 copayment per covered individual. Office visit charges by participating providers for well child care, including routine pediatric immunizations, will be excluded from the office visit copays.

(b) Charges by participating providers for professional services for allergen immunotherapy in the prescribing physician's office or institution will be excluded from the office visit copayment.

(c) All covered outpatient surgery procedures performed by a participating provider during a visit will be subject to a $10 copay. Effective January 1, 2005, all covered outpatient surgery procedures performed by participating providers will be subject to a $12 copayment per covered individual.

(d) In the event that there is both an office visit charge and an office surgery charge by a participating provider in any single visit, the covered individual will be subject to a single copayment.

(e) All covered diagnostic/laboratory services performed by a participating provider during a visit will be subject to a $10 copay. Effective January 1, 2005, all covered diagnostic/laboratory services performed by participating providers will be subject to a $12 copayment per covered individual.

(f) All covered outpatient radiology services performed by a participating provider during a visit will be subject to a $10 copay. Effective January 1, 2005, all covered radiology services performed by participating providers will be subject to a $12 copayment per covered individual.

(g) Outpatient radiology services and diagnostic/laboratory services rendered during a single visit by the same participating provider will be subject to a single copayment.

(h) Chronic care services for chemotherapy, radiation therapy, or hemodialysis will be excluded from the office visit copayment.

(i) The office visit, surgery, outpatient radiology, and diagnostic/laboratory copayments may be applied against the basic medical coinsurance maximum but they will not be considered covered expenses for basic medical payment.

**Empire Plan Basic Medical**

(j) The Empire Plan shall also include basic medical coverage to provide benefits when non-participating providers are used. These benefits will be paid directly to enrollees according to reasonable and customary charges and will be subject to deductible, coinsurance, and calendar year and lifetime maximums.

(k) The Empire Plan participating provider schedule of allowances and the basic medical reasonable and customary levels will be at least equal to those levels in effect on March 31, 2003.

(l) An annual evaluation and adjustment of basic medical reasonable and customary charges will be performed according to the guidelines established by the basic medical plan insurer.

P 002901

(m) An Alternative Medicine Program which will allow Empire Plan enrollees and dependents to seek specified non-covered alternative treatments/services at a discounted employee-pay-all fee will be made available through a network of providers. The Joint Committee on Health Benefits will work with the State and appropriate carrier to provide ongoing oversight of the Complementary Alternative Medicine Program.

**§9.4 CSEA Empire Plan Enhancements**

In addition to the basic Empire Plan benefits, the Empire Plan for CSEA enrollees shall include:

(a) The basic medical component deductible shall equal $185 per enrollee, $185 per covered spouse/domestic partner, and $185 for one or all dependent children. Effective January 1, 2005, the basic medical component deductible shall equal $225 per enrollee, $225 per covered spouse/domestic partner, and $225 for one or all dependent children. Covered expenses for mental health and/or substance abuse treatment or physical medicine services are excluded in determining the basic medical component deductible.

(b) The maximum enrollee coinsurance out-of-pocket expense under the basic medical component shall equal $776 per individual or family in any one year. Effective January 1, 2005, the maximum enrollee coinsurance out-of-pocket expense under the basic medical component shall equal $900 per individual or family in any one year. Effective January 1, 2005 for employees in a title Salary Grade 6 or below or an employee equated to a position title Salary Grade 6 or below on January 1, 2005, the $900 maximum coinsurance out-of-pocket expense shall be reduced to a maximum of $500 in coinsurance per year. Covered expenses for mental health and/or substance abuse treatment or physical medicine services are excluded in determining the $776/$500 maximum coinsurance limits.

(c) Employees 50 years of age or older and their covered spouses/domestic partners 50 years of age or older will be allowed up to $250 reimbursement annually towards the cost of a routine physical examination provided by a non-participating physician. These benefits shall not be subject to a deductible and coinsurance.

(d) The cost of certain injectable adult immunizations shall be a covered expense, subject to copayment(s) under the participating provider portion of the Empire Plan. The list of immunizations shall include Influenza, Pneumococcal, Measles, Mumps, Rubella, Varicella and Tetanus Toxoid, and shall be subject to protocols developed by the medical program insurer.

(e) Routine pediatric care, including well child office visits, physical examinations and pediatric immunizations, for children up to age 19 will be covered under the basic medical program, subject to deductible or coinsurance. Influenza vaccine is included on the list of pediatric immunizations, subject to appropriate protocols, under the participating provider and basic medical components of the Empire Plan.

(f) The routine newborn allowance under the basic medical component shall be $150, not subject to deductible or coinsurance.

(g) The annual and lifetime maximum for each covered member under the basic medical component shall be unlimited.

(h) Services for examinations and/or purchase of hearing aids shall be a covered basic medical benefit and shall be reimbursed up to a maximum of $1,200 once every four years, not subject to deductible or coinsurance. Effective January 1, 2005, the hearing aid reimbursement will be increased to $1,200, per hearing aid, per ear, once every four years, not subject to deductible or coinsurance. Effective January 1, 2006, the hearing aid reimbursement shall be increased to $1,500, per hearing aid, per ear, once every four years, not subject to deductible or coinsurance. For children 12 and under the same benefits can be available after 24 months, when it is demonstrated that a covered child's hearing has changed significantly and the existing hearing aid(s) can no longer compensate for the child's hearing impairment.

17

(i) Covered charges for medically appropriate local professional ambulance transportation will be a covered basic medical expense subject only to a $35 copayment. Volunteer ambulance transportation will continue to be reimbursed for donations at the current rate of $50 for under 50 miles and $75 for 50 miles or over. These amounts are not subject to deductible or coinsurance.

(j) Mastectomy brassieres prescribed by a physician, including replacements when it is functionally necessary to do so, shall be a covered benefit under the Empire Plan. Effective January 1, 2005, external mastectomy prostheses will be a covered in full benefit, not subject to deductible or coinsurance. Coverage will be provided by the medical carrier as follows:
- Benefits are available for one single/double mastectomy prosthesis in a calendar year.
- Pre-certification through the Home Care Advocacy Program is required for any single external prosthesis costing $1,000 or more. If a less expensive prosthesis can meet the individual's functional needs, benefits will be available for the most cost-effective alternative.

(k) The Pre-Tax Contribution Program will continue unless modified or exempted by the Federal Tax Code.

(l) A Medical Flexible Spending Account (MFSA) will continue to be provided. The Joint Committee on Health Benefits shall work with the State to provide ongoing oversight of the MFSA.

(m) Effective January 1, 2005 or as soon as practicable thereafter, the Empire Plan Centers of Excellence Programs will be expanded to include Cancer Resource Services. The Cancer Resource Program will provide:
- Direct telephonic nurse consultations;
- Information and assistance in locating appropriate care centers;
- Connection with cancer experts at Cancer Resource Services network facilities;
- A modest travel allowance; and
- Paid-in-full reimbursement for all services provided at a Cancer Resource Services network facility when the care is pre-certified.

(n) Effective January 1, 2005 or as soon as practicable thereafter, the Empire Plan medical carrier will establish a network of prosthetic and orthotic providers. Prostheses or orthotics obtained through an approved prosthetic/orthotic network provider will be paid in full under the participating provider component of the Empire Plan, not subject to copayment. For prostheses or orthotics obtained other than through an approved prosthetic/orthotic network provider, reimbursement will be made under the basic medical component of the Empire Plan, subject to deductible and coinsurance.

If more than one prosthetic or orthotic device can meet the individual's functional needs, benefits will be available for the most cost-effective piece of equipment. Benefits are provided for a single-unit prosthetic or orthotic device except when appropriate repair and/or replacement of devices are needed.

(o) Effective January 1, 2005, a Basic Medical Provider Discount Program will be available through the basic medical component of the Empire Plan.
- Empire Plan enrollees will have access to an expanded network of providers through an additional provider network;
- Basic Medical provisions will apply to the providers in the expanded network option (deductible and 20% coinsurance);
- Payment will be made by the Plan directly to the discount providers, no balance billing of discounted rate will be permitted;

P 002903

- This program is offered as a pilot program and will terminate on December 31, 2006, unless extended by agreement of both parties.

### §9.5 Empire Plan Mental Health and Substance Abuse

The Empire Plan shall continue to provide comprehensive coverage for medically necessary mental health and substance abuse treatment services through a managed care network of preferred mental health and substance abuse care providers. Network and non-network benefits shall be those in effect on March 31, 2003 with exception of the copayment for outpatient substance abuse treatment. The outpatient substance abuse treatment copayment shall continue to equal the participating provider office visit copayment. Expenses applied against the mental health and substance abuse non-network deductible and network copay levels will not apply against any deductible or copay levels or maximums under the basic medical component of the Plan. The maximum lifetime benefit for non-network substance abuse services shall be $100,000. Effective January 1, 2004, the maximum lifetime benefit for non-network substance abuse services shall be increased to $250,000.

### §9.6 Empire Plan Benefits Management Program

The current Benefits Management Program for CSEA employees enrolled in the Empire Plan shall remain in effect unless modified by the Joint Committee on Health Benefits.

(a) The Empire Plan Benefits Management Program's Prospective Procedure Review requirement will include only Magnetic Resonance Imaging ("MRI").

(b) Effective January 1, 2005, any day deemed inappropriate for an inpatient setting and/or not medically necessary will be excluded from coverage under the Empire Plan.

### §9.7 Empire Plan Home Care Advocacy Program

The current Home Care Advocacy Program (HCAP) for CSEA employees enrolled in the Empire Plan shall continue. Individuals who fail to have medically necessary designated HCAP services and supplies pre-certified by calling HCAP and/or individuals who use a non-network provider will receive reimbursement at 50 percent of the HCAP allowance for all services, equipment and supplies upon satisfying the basic medical annual deductible. In addition, the basic medical out-of-pocket maximum will not apply to HCAP designated services, equipment and supplies. All other HCAP non-network benefit provision will remain.

### §9.8 Empire Plan Managed Physical Medicine Program

The Empire Plan's medical care component will continue to offer a comprehensive managed care network benefit for the provision of medically necessary physical medicine services, including physical therapy and chiropractic treatments. Authorized network care will be available, subject only to the Plan's participating provider office visit copayment(s). Unauthorized medically necessary care will also be available, subject to an annual deductible of $250 per enrollee, $250 per spouse/domestic partner and $250 for one or all dependent children and a maximum payment of 50% of the network allowance for the service(s) provided. Maximum benefits for non-network care will be limited to $1,500 in payments per calendar year. Deductible/coinsurance payments will not be applicable to the Plan's annual basic medical deductible/coinsurance maximums. The Joint Committee on Health Benefits will work with the State on the ongoing administration of this benefit. The participating provider office visit copayment(s) shall apply to covered physical therapy visits received at the outpatient department of the hospital.

P 002904

### §9.9 Empire Plan Infertility Benefits Program

Empire Plan participating provider and basic medical coverage for the treatment of infertility will continue as follows:

(a) access to designated "Centers of Excellence" including travel benefit;

(b) enhance benefit to include the treatment of "couples" as long as both partners are covered either as enrollee or dependent under the Empire Plan;

(c) lifetime coverage limit per individual of $25,000. Effective January 1, 2005 the lifetime coverage limit per individual will be $50,000;

(d) covered services: patient education/counseling, diagnostic testing, ovulation induction/hormonal therapy, surgery to enhance reproductive capability, artificial insemination and Assisted Reproductive Technology procedures;

(e) exclusions: experimental procedures, fertility drugs dispensed at a licensed pharmacy, medical and other charges for surrogacy, donor services/compensation in connection with pregnancy, storage of sperm, eggs and/or embryo for longer than 6 months and high risk patients with no reasonable expectation for pregnancy.

The Joint Committee on Health Benefits will work with the State and Empire Plan carriers on the ongoing oversight of this benefit. Additionally, ongoing Program oversight and evaluation of the lifetime coverage limit will enable future modification if warranted.

### §9.10 Empire Plan Voluntary Nurse Line

The medical component of the Empire Plan shall include a voluntary 24-hour/7-days a week nurse-line feature to provide both clinical and benefit information through a toll-free phone number.

The Joint Committee on Health Benefits will work with the State and Empire Plan carriers on the ongoing oversight of this benefit.

### §9.11 Empire Plan Disease Management Program

The Empire Plan medical component shall include a voluntary disease management program. Disease Management covers those illnesses identified to be chronic, high cost, impact quality of life, and rely considerably on the patient's compliance with treatment protocols. Current programs include Cardiovascular Risk Reduction, Migraine Management, Asthma and Diabetes. Effective July 1, 2004, or as soon as practicable thereafter, the Empire Disease Management component shall be expanded to include two (2) additional programs. If time permits during the term of this agreement, a third Disease Management Program will be added.

The Joint Committee on Health Benefits will work with the State and Empire Plan carriers on the selection, design, implementation and ongoing oversight of the new and existing Disease Management Programs.

### §9.12 Health Maintenance Organizations

Eligible employees in the State Health Insurance Plan may elect to participate in a federally qualified or state certified Health Maintenance Organization which has been approved to participate in the State Health Insurance Program by the Joint Committee on Health Benefits. If more than one HMO services the same geographic area, the Joint Committee on Health Benefits reserves the right to approve a contract with only such organization(s) deemed to be a quality, cost effective option(s). The Joint Committee on Health Benefits will work with the State through the HMO Workgroup to identify and mutually agree upon appropriate incentives for HMO alternatives to become more competitive in quality of care provided and efficient in cost to payers. Employees may change their health insurance option each year during the month of November, unless another period is mutually agreed upon by the State and the Joint Committee on Health Benefits. If the rate renewals are not available by the time of the open option transfer period, then the open transfer period shall be extended to assure ample time for employees to transfer.

P 002905

### §9.13 Premium Contribution Level-Health Only

(a) The State agrees to pay 90 percent of the cost of individual coverage and 75 percent of the cost of dependent coverage toward the hospital/medical/mental health and substance abuse components provided under the Empire Plan.

(b) The State agrees to continue to provide alternative Health Maintenance Organization (HMO) coverage and agrees to pay 90 percent of the cost of individual coverage and 75 percent of the cost of dependent coverage toward the hospital/-medical/mental health and substance abuse components of each HMO, however, not to exceed 100 percent of its dollar contribution for those components under the Empire Plan.

### §9.14 Prescription Drug Premium Contribution Level -Benefit Structure

(a) Eligible CSEA employees enrolled in the New York State Health Insurance Program (NYSHIP) will be provided with prescription drug coverage either through the Empire Plan Prescription Drug Program or a Health Maintenance Organization. The State agrees to pay 90 percent of the cost of individual coverage and 75 percent of the cost of dependent prescription drug coverage under the Empire Plan and Health Maintenance Organizations.

(b) The Empire Plan Prescription Drug Program benefits shall consist of the following: Prescription Drug Program will cover medically necessary drugs, including vitamins and contraceptive drugs and devices, requiring a physician's prescription and dispensed by a licensed pharmacist. Mandatory Generic Substitution will be required for all brand-name multisource prescription drugs (a brand-name drug with a generic equivalent) covered by the Prescription Drug Program. When a brand-name multi-source drug is dispensed, the Program will reimburse the pharmacy (or enrollee) for the cost of the drug's generic equivalent. The enrollee is responsible for the cost difference between the brand-name drug and its generic equivalent plus the brand-name copayment.

- The copayment will be $5.00 for up to a 90 day supply of generic drugs dispensed at either the retail pharmacy or the mail service pharmacy.
- The copayment will be $15.00 for up to a 90 day supply of brand-name drugs dispensed at either the retail pharmacy or the mail service pharmacy.

Effective January 1, 2005, a third level of prescription drugs and prescription copayments will be created to differentiate between preferred brand-name and non-preferred brand-name drugs. The copayment for prescription drugs purchased at a retail pharmacy or the mail service pharmacy for up to a 30-day supply shall be as follows:

- $5 Generic
- $15 Preferred-Brand
- $30 Non-Preferred Brand

When a brand-name prescription drug is dispensed and an FDA-approved generic equivalent is available, the member will be responsible for the difference in cost between the generic drug and the non-preferred brand-name drug, plus the non-preferred brand-name copayment ($30).

The copayment for prescription drugs purchased at a retail pharmacy for a 31-90 day supply shall be as follows:

- $10 Generic
- $30 Preferred Brand
- $60 Non-Preferred Brand

When a brand-name prescription drug is dispensed and an FDA-approved generic equivalent is available, the member will be responsible for the difference in cost between the generic drug and the non-preferred brand-name drug, plus the non-preferred brand-name copayment ($60).

The copayment for prescription drugs purchased through the mail service pharmacy for a 31-90 day supply will be as follows:
- $5 Generic
- $20 Preferred Brand
- $55 Non-Preferred Brand

When a brand-name prescription drug is dispensed and an FDA-approved generic equivalent is available, the member will be responsible for the difference in cost between the generic drug and the non-preferred brand-name drug, plus the non-preferred brand-name copayment ($55).

### §9.15 Part-Time Employees

The State Health Insurance Plans' regulations shall continue to stipulate that the term employee means any person in the service of the State as employer whose regular work schedule is at least half-time per bi-weekly payroll period.

### §9.16 Waiting Period

There shall be a waiting period of forty-two (42) days after employment before an employee shall be eligible for enrollment under the State's Health Insurance Program.

### §9.17 Dependent Proofs/Coverage

(a) Current and/or new enrollees opting for family coverage must provide the names of all covered dependents to the Plan Administrator. In the case of covered newborn dependents, names shall be provided within 3 months of the date of birth. Additionally, the social security numbers of a covered spouse, if applicable, and/or dependent student(s) over the age of 19, if applicable, shall be provided to the Plan Administrator in order to verify continued eligibility for family coverage and to facilitate coordination of benefits.

(b) Covered dependent students shall be provided with a 3-month extended benefit period upon graduation from a qualified course of study. The benefit extension will begin on the first day of the month following the month in which dependent student coverage would otherwise end and will last for three months or until such time as eligibility would otherwise be lost under existing plan rules.

(c) Covered dependents of employees who are activated for military duty as a result of an action declared by the President of the United States or Congress shall continue health insurance coverage with no employee contribution for a period not to exceed 12 months from the date of activation, less any period the employee remains in full pay status. Contribution free health insurance coverage will end at such time as the employee's active duty is terminated or the employee returns to State employment, whichever occurs first.

### §9.18 Domestic Partners

Domestic partners who meet the definition of a partner and can provide acceptable proofs of financial interdependence as outlined in the Affidavit of Domestic Partnership and Affidavit of Financial Interdependency shall be eligible for health care coverage. As part of this agreement, the impact of such domestic partner coverage under the Empire Plan will continue to be reviewed through the Joint Committee on Health Benefits, including the appropriateness of the existing waiting periods.

### §9.19 Seasonal Employees

(a) Seasonal employees who, at the time of hire, are expected to be continuously employed on at least a half-time basis for at least six-months, shall be eligible to apply for health insurance coverage as of the date of employment. Coverage shall be subject to a 42-day new employee waiting period starting on the date of first employment, and benefits shall be available as of the 43rd day of employment, assuming the employee submitted a written application for coverage during the 42 day waiting period and was on the payroll or on authorized workers' compensation leave without pay for the entire 42 day waiting period.

(b) Seasonal employees who, at the time of hire, are not expected to be continuously employed on at least a half-time basis for at least six months, shall not be eligible for health benefits at the start of employment. However, upon actual completion of six months of continuous employment on at least a half-time basis, an employee so hired shall become eligible to apply for health benefits. Coverage shall become effective following the completion of a 42 day new employee waiting period that commences on the day following their completion of six months of such a work schedule, assuming the employee submits a written application for coverage during the waiting period, and remains on the payroll or on authorized workers' compensation leave without pay for the entire 42 day waiting period.

(c) Where the state establishes a seasonal position for six months or more, the appointee to that position shall not have his or her service intentionally broken solely for the purpose of rendering that employee ineligible for health insurance purposes. However, if that individual's service is broken for another reason, the individual shall not be eligible to continue coverage after employment is terminated, except as described in Section (d) below.

(d) Should a seasonal employee who attained health insurance coverage under Section (a) or (b) above, leave the payroll and then be rehired subsequently, the employee shall retain eligibility for health insurance coverage upon rehire without being hired for an anticipated six month period of continuous employment on at least a half-time basis, provided the employee is not off the payroll more than six months. An employee so rehired may continue his or her health insurance by paying the full cost of the coverage for the period of time he or she is off the payroll, or, if not rehired, until the date that is six months from the date employment terminated.

### §9.20 Layoff

A permanent full-time employee who loses employment as a result of the abolition of a position on or after April 1, 1977, shall continue to be covered under the State Health Insurance Plan at the same contribution rate as an active employee for one year following such layoff or until reemployment by the State or employment by another employer, whichever first occurs.

### §9.21 Workers' Compensation

(a) A permanent full-time employee who is removed from the payroll due to an accepted work related injury or occupational condition shall remain covered under the State Health Insurance Plan and the terms as defined in §11.5 of this agreement

(b) A permanent full-time employee who is removed from the payroll due to a controverted work related injury or occupational condition will have the right to apply for a health insurance premium waiver. The appropriate agency will be responsible to inform the employee of his or her right to apply for the waiver prior to the employee meeting the eligibility requirements for the waiver of premium.

### §9.22 Disabled/Deceased Employees

(a) Continued health insurance coverage will be provided for the unremarried spouse and other eligible dependents of employees who die in State service under circumstances under which they are eligible for the accidental death benefit or for weekly cash workers' compensation benefits under the same conditions prescribed in Section 165 of the Civil Service Law for dependents of a deceased employee who was at the time of death an employee at a correctional facility having individual and dependent coverage at the time of death and where death occurred as a result of injuries during the period from September 9 through 13, 1971.

(b) If an employee is granted a service-connected disability retirement by a retirement or pension plan or system administered and operated by the State of New York, the State will continue the health insurance of that employee on the same basis as any other retiring employee, regardless of the duration of the employee's service with the State.

### §9.23 Retirement/Deceased Employees

(a) The unremarried spouse and otherwise eligible dependent children of an employee, who retires after April 1, 1979, with ten or more years of active State service and subsequently dies, shall be permitted to continue coverage in the health insurance program with payment at the same contribution rates as required of active employees for the same coverage.

(b) The unremarried spouse and otherwise eligible dependent children of an active employee, who dies after April 1, 1979 and who, at the date of death, had at least 10 years of benefits eligible service and who was at least 45 years of age and was within 10 years of the minimum retirement age shall be permitted to continue coverage in the health insurance program with payment at the same contribution rates as required of active employees for the same coverage.

### §9.24 Service Requirements/Sick Leave Credit

(a) Employees covered by the State Health Insurance Plan have the right to retain health insurance after retirement upon completion of ten years of service.

(b) An employee who is eligible to continue health insurance coverage upon retirement is entitled to a sick leave credit to be used to defray any employee contribution toward the cost of the premium. The basic monthly value of the sick leave credit shall be calculated according to the procedures in use on March 31, 2003. However, employees retiring on or after January 1, 1989 may elect an alternative method of applying the basic monthly value of the sick leave credit. Employees selecting the basic sick leave credit may elect to apply up to 100% of the calculated basic monthly value of the credit towards defraying the required contribution to the monthly premium during their own lifetime. If employees who elect that method predecease their eligible covered dependents, the dependents may continue to be covered, but must pay the applicable dependent survivor share of the premium Employees selecting the alternative method may elect to apply only up to 70% of the calculated basic monthly value of the credit toward the monthly premium during their own lifetime. Upon the death of the employee, however, any eligible surviving dependents may also apply up to 70% of the basic monthly value of the sick leave credit toward the dependent survivor share of the monthly premium for the duration of the dependents' eligibility. The State has the right to make prospective changes to the percentage of credit to be available under this alternative method for future retirees as required to maintain the cost neutrality of this feature of the plan. The selection of the method of sick leave credit application must be made at the time of retirement, and is irrevocable. In the absence of a selection by the employee, the basic method shall be applied.

### §9.25 Deferral of Health Insurance

An employee retiring from State service may delay commencement or suspend his/her retiree health coverage and the use of the employee's sick leave conversion credits indefinitely, provided that the employee applies for the delay or suspension, and furnishes proof of continued coverage under the health care plan of the employee's spouse, or from post retirement employment.

### §9.26 Joint Committee on Health Benefits

(a) The State and CSEA agree to continue the Joint Committee on Health Benefits.

(b) The State shall seek the appropriation of funds by the Legislature to support committee initiatives and to carry out the administrative responsibilities of the Joint Committee in the amount indicated for each year of the agreement: $945,000 in 2003-2004, $945,000 in 2004-2005, $945,000 in 2005-2006, and $945,000 in 2006-2007.

P 002909

(c) The Joint Committee on Health Benefits shall work with appropriate State agencies to make mutually agreed upon changes in the Plan benefit structure through such initiatives as:

(1) The annual HMO Review Process;

(2) The ongoing review and oversight of the Managed Mental Health and Substance Abuse Treatment Program;

(3) The ongoing review and oversight of the Managed Physical Medicine Program;

(4) The continuation of the Benefits Management Program and annual review of the list of procedures requiring Prospective Procedure Review.

(5) The Joint Committee on Health Benefits will work with the State and medical carrier to solicit and contract with credentialed radiological providers to provide mammography screening, according to the American Cancer Society's medical protocols, at the worksite and/or predetermined location. Reimbursement will be provided in accordance with the participating provider program, subject to the diagnostic copayment.

(6) The continuation of the ambulatory surgery benefit and monitoring of participating centers. The Joint Committee on Health Benefits will work with the State to oversee the solicitation by the medical/-surgical/basic medical carrier of Ambulatory Surgical Centers in bordering states and in those states where retirees commonly reside

(7) The continuation of the Home Care Advocacy Program (HCAP) and the ongoing review of services offered.

(8) The Joint Committee on Health Benefits will continue to review the impact of Domestic Partner coverage.

(d) The Joint Committee's area of review and counsel shall include but not be limited to the following areas:

(1) Development of health benefit communication programs related to the consumption of health care services provided under the Plan.

(2) Development, as appropriate in conjunction with the carriers, of revised benefit booklets, descriptive literature and claim forms.

(3) The CSEA Joint Committee on Health Benefits will work with the State to develop a "report card" which will include objective quality data to assist employees in selecting the health benefit plan that best meets the needs for the employee and their dependents.

(4) In cooperation with the State, the Joint Committee on Health Benefits will review the feasibility of providing employees with an Annual Health Insurance Buy-out.

(5) The Joint Committee on Health Benefits will work with the State to study the feasibility of an inclusive statewide "carve-out" program for prescription drugs.

(6) The JCHB will work with the State and medical carrier to develop an enhanced network of urgent care facilities.

(7) The JCHB will work with the State to study the feasibility of administering the Empire Plan through an alternate funding arrangement

(8) The JCHB will work with the State to implement a direct debit vehicle to be utilized under the Medical Flexible Spending Account

(9) The JCHB will work with the State to conduct an extensive analysis of the current New York State Health Insurance Program (NYSHIP) (Empire Plan and HMOs) prescription drug benefit designs and associated costs.

(10) The JCHB shall study the feasibility of a two-person premium structure

(11) The JCHB shall work with the State and the Medical carrier to implement a Reminder Program for Empire Plan enrollees and their dependents to identify eligible individuals who may not have received preventive screening exams or other services. At a minimum, the Program shall include;
- Mammography Reminder Program
- Cervical Cancer Screening Reminder Program
- Adolescent Immunization Reminder Program

(12) The JCHB will work with the State and the Empire Plan hospital and medical carriers to explore the development of an Empire Plan Hospital Network, which shall include paid-in-full benefits for anesthesiology, radiology and pathology

(e) The Joint Committee shall work with appropriate State agencies to review and oversee the various health plans available to employees represented by CSEA.

(f) The Joint Committee on Health Benefits shall work with appropriate State agencies to monitor future employer and employee health plan cost adjustments.

(g) The Joint Committee shall be provided with each carrier rate renewal request upon submission and be briefed in detail periodically on the status of the development of each rate renewal.

(h) The State shall require that the insurance carriers for the State Health Insurance Plan submit claims and experience data reports directly to the Joint Committee on Health Benefits in the format and with such frequency as the Committee shall determine.

(i) The Joint Committee will be responsible for the annual review of participating providers. The Joint Committee shall investigate and where feasible, take appropriate action to recruit additional providers in geographic and specialty areas determined by the Committee to be deficient.

(j) The Joint Committee shall continue to sponsor the agency health insurance administrator-training program.

(k) The Joint Committee shall study recurring subscriber complaints and make recommendations for the resolution of such complaints.

(l) The Joint Committee on Health Benefits shall meet within 14 days after a request to meet has been made by either side.

(m) The Joint Committee shall study and address other issues and concerns brought to the attention of the Committee that impact the accessibility, quality and costs of health care for employees covered by this Agreement.

### §9.27 Communications

Appropriate descriptive material relating to any changes in benefits shall be distributed to each State agency for internal distribution prior to the effective date of the change in benefit. The State shall take all steps necessary to provide revised health insurance booklets to every employee as soon as possible. The Joint Committee on Health Benefits shall provide review and counsel on the development of the revised booklets.

### §9.28 Confidentiality

The confidentiality of individual subscriber claims shall not be violated. Except as required to conduct financial and claims processing audits of carriers and coordination of benefit provisions, specific individual claims data, reports or summaries shall not be released by the carrier to any party without the written consent of the individual, insured employee or covered dependent.

P 002911

parties acknowledge that, except as otherwise expressly provided herein, they have fully negotiated with respect to the terms and conditions of employment and have settled them for the term of this Agreement in accordance with the provisions thereof.

## ARTICLE 51
**Severability**

In the event that any article, section or portion of this Agreement is found to be invalid by a decision of a tribunal of competent jurisdiction or shall have the effect of loss to the State of funds made available through Federal law, then such specific article, section or portion specified in such decision or having such effect shall be of no force and effect, but the remainder of this Agreement shall continue in full force and effect. Upon the issuance of such a decision or the issuance of a ruling having such effect of loss of Federal funds, then either party shall have the right immediately to reopen negotiations with respect to a substitute for such article, section or portion of this Agreement involved. The parties agree to use their best efforts to contest any such loss of Federal funds which may be threatened. In the event that the Legislature fails to implement Section 7.1, any or all articles may be reopened at the option of CSEA or the State, and renegotiated. In the event that any other article, section or portion of this Agreement fails to be implemented by the Legislature, then in that event, such article, section or portion may be reopened by CSEA or the State and renegotiated. During the course of any reopened negotiations any provision of this Agreement not affected by such reopener shall remain in full force and effect.

## ARTICLE 52
**APPROVAL OF THE LEGISLATURE**

**IT IS AGREED BY AND BETWEEN THE PARTIES THAT ANY PROVISION OF THIS AGREEMENT REQUIRING LEGISLATIVE ACTION TO PERMIT ITS IMPLEMENTATION BY AMENDMENT OF LAW OR BY PROVIDING THE ADDITIONAL FUNDS THEREFORE, SHALL NOT BECOME EFFECTIVE UNTIL THE APPROPRIATE LEGISLATIVE BODY HAS GIVEN APPROVAL.**

## ARTICLE 53
**Duration of Agreement**

The term of this Agreement shall be from April 2, 2003 to April 1, 2007.

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be signed by their respective representatives on April 27, 2004.

P 002958

THE EXECUTIVE BRANCH OF THE STATE OF NEW YORK

**George Madison**
Director of GOER

**John Currier**
Executive Deputy Director and Chief Negotiator

**Michael McDonald**
Assistant Director

**Jeannine Morell**
Assistant Director

**Walter Pellegrini**
General Counsel

**Richard J. Dautner**
Deputy Counsel

**Priscilla Feinberg**
Assistant Director, Employee Benefits Management

**Team Members:**

| | | |
|---|---|---|
| Mary Ackley | Cathy Beard | Deb Berg |
| Steve Boland | Jennifer Breen | Bob Brondi |
| Dan Cunningham | Gail Curley | Deborah Dammer |
| Larry Decker | Lou DeSol | Craig Dickinson |
| William Doyle | Christine Gleman | Walter Greenberg |
| Peg Harrigan | Jeffrey Harwood | Robert Hoffmeister |
| Terry Jordan | Michele Kramek | Debye Lurie |
| Kathryn Marcello | Dick Martin | Timothy McMullen |
| Lorraine Nicholas | Chuck Parmentier | Amy Petragnani |
| Jim Rulison | Ellen Schusterson | Onnolee Smith |
| Chuck Vejvoda | Christine Williams | Anthony Zeppetello |

P 002959

**CIVIL SERVICE EMPLOYEES ASSOCIATION, INC., LOCAL 1000, AFSCME, AFL-CIO**

**Danny Donohue**
President

**Ross D. Hanna**
Director of Contract Administration, Chief Negotiator

**James Hennerty**
Deputy Director of Contract Administration

**Mary Rubilotta**
Deputy Director of Contract Administration

**Guy Dugas**
Deputy Director of Contract Administration

**Denise Plunkett**
Staff Secretary

**Team Members:**

**William VanGuilder, Chair**
Tom Moylan
Sharon Connor
Barbara DeSimone
Dawn Smith
Leonita Wilson
Angela Gadaletta