# Exhibit 7

CSeA 1



# AGREEMENT

**BETWEEN**

**THE CIVIL SERVICE**

**EMPLOYEES ASSOCIATION, INC.**

**and**

**THE STATE OF NEW YORK**

## Administrative Services Unit

**CSEA**
Local 1000, AFSCME, AFL-CIO

**1995-1999**

P 002440

## ADMINISTRATIVE SERVICES UNIT
## AGREEMENT

Agreement made by and between the Executive Branch of the State of New York (the "State") and The Civil Service Employees Association, Inc. ("CSEA").

## ARTICLE 1
### Recognition

The State, pursuant to the certification of the Public Employment Relations Board, recognizes CSEA as the exclusive representative for collective negotiations with respect to salaries, wages, hours and other terms and conditions of employment of employees serving in positions in the Administrative Services Unit and similar positions hereafter created. The terms "employee" or "employees" as used in this Agreement shall mean only employees serving in positions in such unit and shall include seasonal employees where so specified.

## ARTICLE 2
### Statement of Policy and Purpose

§2.1 It is the policy of the State to continue harmonious and cooperative relationships with its employees and to ensure the orderly and uninterrupted operations of government. This policy is effectuated by the provisions of the Public Employees' Fair Employment Act granting public employees the rights of organization and collective representation concerning the determination of the terms and conditions of their employment.

§2.2 The State and CSEA now desire to enter into an agreement reached through collective negotiations which will have for its purposes, among others, the following:

(a) To recognize the legitimate interests of the

P 002445

miles from their home and their official station.

### §8.5 Use of Personal Vehicles

(a) When employees make available their personal vehicles to transport clients or residents in the care of the State, the State agrees to provide, subject to the rules and regulations of the Comptroller, a supplemental mileage allowance rate of seven cents per mile for the use of personal vehicles for those persons eligible for such allowance when authorized to transport clients or residents.

(b) When employees make available their personal vehicles to transport building or construction materials, the State agrees to provide, subject to the rules and regulations of the Comptroller, a supplemental mileage allowance rate of seven cents per mile for the use of personal vehicles when authorized to transport such materials.

### §8.6 Relocation Expenses

During the term of this Agreement, employees in CSEA negotiating units who qualify for reimbursement for travel and moving expenses upon transfer, reassignment or promotion (under Section 202 of the State Finance Law and the regulations thereunder) or for reimbursement for travel and moving expenses upon initial appointment to State service (under Section 204 of the State Finance Law and the regulations thereunder) shall be entitled to payment at the rates provided in the rules of the Director of the Budget 9 NYCRR Part 155.

### ARTICLE 9
### Health Insurance

§9.1 (a) The State shall continue to provide all the forms and extent of coverage as defined by the contracts in force on March 31, 1995 with the State's health

P 002469

insurance carriers unless specifically modified by this Agreement.

(b) The State shall provide toll-free telephone service at the Department of Civil Service Health Insurance Section for information and assistance to employees and dependents on health insurance matters.

§9.2 (a) Effective on the date of execution of this Agreement, charges for outpatient services covered by the hospital contract, including emergency room services, will be subject to a $25 copayment per outpatient visit. Effective January 1, 1999, this copayment will increase to $30 for emergency room services. Charges for other outpatient services covered by the hospital contract will continue to be subject to a $25 copayment unless modified through the Joint Committee on Health Benefits, upon implementation of the medical care Point of Service plan. These hospital outpatient copayments will be waived for persons admitted to the hospital as an inpatient directly from the outpatient setting and for the following covered chronic care outpatient services: chemotherapy, radiation therapy, physical therapy or hemodialysis.

(b) Charges for the attending hospital emergency room physician and providers who administer or interpret radiological exams, laboratory tests, electrocardiograms and pathology services directly associated with the covered hospital emergency room care for a medical emergency will be reimbursed under the participating provider or the basic medical program not subject to deductible or coinsurance when such services are not included in the hospital facility charge covered by Blue Cross.

§9.3 The Empire Plan shall include medical/surgical coverage through use of participating providers who will accept the Plan's schedule of allowances as payment in

P 002470

full for covered services. Except as noted below, benefits will be paid directly to the provider at 100 percent of the Plan's schedule not subject to deductible, coinsurance, or annual lifetime maximums.

(a) Office visit charges by participating providers will be subject to a $5 copay per covered individual. Office visit charges by participating providers for well child care, including routine pediatric immunizations, will be excluded from the office visit copays.

(b) Effective on the date of execution of this Agreement, charges by participating providers for professional services for allergen immunotherapy in the prescribing physician's office or institution will be excluded from the office visit copayment.

(c) All covered outpatient surgery procedures performed by a participating provider during a visit will be subject to a $5 copay.

(d) Effective on the date of execution of this Agreement, in the event that there is both an office visit charge and an office surgery charge by a participating provider in any single visit, the covered individual will be subject to a single copayment.

(e) All covered diagnostic/laboratory services performed by a participating provider during a visit will be subject to a $5 copay.

(f) All covered outpatient radiology services performed by a participating provider during a visit will be subject to a $5 copay.

(g) Effective on the date of execution of this Agreement, outpatient radiology services and diagnostic/laboratory services rendered during a single visit by the same participating provider will be subject to a single copayment.

(h) Chronic care services for chemotherapy, radiation

32    P 002471

therapy, or hemodialysis will be excluded from the office visit copayment.

(i) The office visit, surgery, outpatient radiology, and diagnostic/laboratory copayments may be applied against the basic medical coinsurance maximum but they will not be considered covered expenses for basic medical payment.

(j) The Empire Plan shall also include basic medical coverage to provide benefits when non-participating providers are used. These benefits will be paid directly to enrollees according to reasonable and customary charges and will be subject to deductible, coinsurance, and calendar year and lifetime maximums.

(k) The Empire Plan participating provider schedule of allowances and the basic medical reasonable and customary levels will be at least equal to those levels in effect on March 31, 1995.

(l) An annual evaluation and adjustment of basic medical reasonable and customary charges will be performed according to the guidelines established by the basic medical plan insurer.

§9.4 CSEA Empire Plan Enhancements

In addition to the basic Empire Plan benefits, the Empire Plan for CSEA enrollees shall include:

(a) The basic medical component deductible shall remain at $161 per enrollee, $161 per covered spouse, and $161 for one or all dependent children. Upon the implementation of the Point of Service plan (§9.25) and thereafter, on each successive January 1, the annual deductible will increase by a percentage amount equal to the percentage increase in the medical care component of the CPI for Urban Wage Earners and Clerical Workers, all Cities (CPI-W) for the period July 1 through June 30 of the preceding year, not to exceed $25 in any one plan

33                P 002472

year. Covered expenses for mental health and/or substance abuse treatment or physical medicine services are excluded in determining the basic medical component deductible.

(b) The maximum enrollee coinsurance out-of-pocket expense under the basic medical component shall remain $776 per individual or family in any one year. Upon the implementation of the Point of Service plan (§9.25) and thereafter, on each successive January 1, the maximum annual coinsurance out-of-pocket expense will increase by a percentage amount equal to the percentage increase in the medical care component of the CPI-W for the period July 1 through June 30 of the preceding year, not to exceed $25 in any one plan year. For employees earning $20,253 or less in base annual salary on April 1, 1995, the $776 maximum coinsurance out-of-pocket expense shall continue to be reduced to a maximum of $500 in coinsurance per year upon application to the Department of Civil Service for the reduction in coinsurance, and upon submission of information showing that the employee is the head of household and sole wage earner in a family. Covered expenses for mental health and/or substance abuse treatment or physical medicine services are excluded in determining the $776/$500 maximum coinsurance limits.

(c) Effective on the date of execution of this Agreement, employees 50 years of age or older shall be allowed reimbursement up to $250 once every two years towards the cost of a routine physical examination. Covered spouses 50 years of age or older shall be allowed reimbursement up to $250 once every two years towards the cost of a routine physical examination. These benefits shall not be subject to a deductible and coinsurance.

(d) Routine pediatric care, including well child office visits, physical examinations and pediatric immunizations,

34

P 002473

for children up to age 19 will be covered under the basic medical program, subject to deductible or coinsurance.

(e) The routine newborn allowance under the basic medical component shall be $100, not subject to deductible or coinsurance.

(f) The annual and lifetime maximum for each covered member under the basic medical component shall be unlimited.

(g) Effective on the date of execution of this Agreement, services for examinations and/or purchase of hearing aids shall be a covered basic medical benefit and shall be reimbursed up to a maximum of $600 once every four years, not subject to deductible or coinsurance. For children 12 and under the same benefits can be available after 24 months, when it is demonstrated that a covered child's hearing has changed significantly and the existing hearing aid(s) can no longer compensate for the child's hearing impairment.

(h) Effective on the date of execution of this Agreement, covered charges for medically appropriate local professional ambulance transportation will be a covered basic medical expense subject only to a $35 copayment. Volunteer ambulance transportation will continue to be reimbursed for donations at the current rate of $50 for under 50 miles and $75 for 50 miles or over. These amounts are not subject to deductible or coinsurance.

(i) Mastectomy brassieres prescribed by a physician, including replacements when it is functionally necessary to do so, shall be a covered benefit under the Empire Plan.

(j) The Pre-Tax Contribution Program will continue unless modified or exempted by the Federal Tax Code.

§9.5 The Empire Plan shall continue to provide comprehensive coverage for medically necessary mental health and substance abuse treatment services through a

P 002474

managed care network of preferred mental health and substance abuse care providers. Network and non-network benefits shall be those in effect on March 31, 1995. Expenses applied against the mental health and substance abuse non-network deductible and network copay levels will not apply against any deductible or copay levels or maximums under the basic medical component of the Plan.

§9.6 The current Benefits Management Program and HealthCall, for CSEA employees enrolled in the Empire Plan shall remain in effect unless modified by the Joint Committee on Health Benefits.

(a) Effective on the date of execution of this Agreement, the Empire Plan Benefits Management Program (HealthCall) will be modified to refine the Prospective Procedure Review requirement to include only Magnetic Resonance Imaging (MRI) and to discontinue mandatory Specialty Consultation Evaluations.

§9.7 The current Home Care Advocacy Program (HCAP) for CSEA employees enrolled in the Empire Plan shall remain in effect unless modified by the Joint Committee on Health Benefits.

§9.8 Effective July 1, 1995, or as soon as practicable thereafter, the Empire Plan's medical care component will be modified to offer a comprehensive managed care network benefit for the provision of medically necessary physical medicine services, including physical therapy and chiropractic treatments. Authorized network care will be available, subject only to the Plan's participating provider $5 office visit copayment(s). Unauthorized medically necessary care, at enrollee choice, will also be available, subject, however, to an annual deductible of $250 per enrollee, $250 per spouse and $250 for one or all dependent children and a maximum payment of 50 percent

36

P 002475

of the network allowance for the service(s) provided. Maximum benefits for non-network care will be limited to $1,500 in payments per calendar year. Deductible/ coinsurance payments will not be applicable to the Plan's annual basic medical deductible/coinsurance maximums. The Joint Committee on Health Benefits will work with the State on the design and implementation of this benefit.

§9.9 Eligible employees in the State Health Insurance Plan may elect to participate in a federally qualified or state certified Health Maintenance Organization (HMO) which has been approved to participate in the State Health Insurance Program by the Joint Committee on Health Benefits. If more than one HMO services the same geographic area, the Joint Committee on Health Benefits reserves the right to approve a contract with only such organization(s) deemed to be a quality, cost-effective option(s). The Joint Committee on Health Benefits will work with the State through the HMO Workgroup to identify and mutually agree upon appropriate incentives for HMO alternatives to become more competitive in quality of care provided and efficient in cost to payers. Employees may change their health insurance option each year during the month of November, unless another period is mutually agreed upon by the State and the Joint Committee on Health Benefits.

If the rate renewals are not available by the time of the open option transfer period, then the open transfer period shall be extended to assure ample time for employees to transfer.

§9.10 (a) The State agrees to pay 90 percent of the cost of individual coverage and 75 percent of the cost of dependent coverage provided under the Empire Plan.

(b) The State agrees to continue to provide alternative HMO coverage and, effective January 1, 1996, agrees to

37     P 002476

pay 90 percent of the cost of individual coverage and 75 percent of the cost of dependent coverage toward the hospital/medical/Mental Health and Substance Abuse components of each HMO, however, not to exceed, as of January 1, 1996, 110 percent of its dollar contribution for those components under the Empire Plan. Enrollee biweekly contribution increases, resulting from this employer contribution rate, if any, will, in 1996, be capped at $5 for individual coverage and $15 for family coverage. Effective January 1, 1997, the State's dollar contribution for HMO coverage will then not exceed 110 percent of its contribution for those components of the Empire Plan, with no cap on any additional enrollee premium contribution required. As of January 1, 1998, the State's HMO contribution will not exceed 105 percent of its Empire Plan contribution for those components and, as of January 1, 1999, the State's HMO contribution will not exceed 100 percent of its dollar contribution for those components under the Empire Plan.

§9.11 The State Health Insurance Plans' regulations shall continue to stipulate that the term "employee" means any person in the service of the State as employer whose regular work schedule is at least half-time per biweekly payroll period.

§9.12 There shall be a waiting period of forty-two (42) days after employment before an employee shall be eligible for enrollment under the State's Health Insurance Program.

§9.13 Current and/or new enrollees opting for family coverage must provide the names of all covered dependents to the Plan Administrator. In the case of covered newborn dependents, names shall be provided within three months of the date of birth. Additionally, the social security numbers of a covered spouse, if applicable, and/or dependent student(s) over the age of 19, if applicable, shall be

38

provided to the Plan Administrator in order to verify continued eligibility for family coverage and to facilitate coordination of benefits.

§9.14 Domestic partners who meet the definition of a partner and can provide acceptable proofs of financial interdependence as outlined in the Affidavit of Domestic Partnership and Affidavit of Financial Interdependency shall be eligible for health care coverage. As part of this Agreement, the impact of such domestic partner coverage under the Empire Plan will be reviewed through the Joint Committee on Health Benefits process upon completion of 12 months experience from the initial date eligibility was extended. Such review may indicate the need for the Committee to take appropriate action to ensure the financial stability of the Plan.

§9.15 (a) Seasonal employees who are anticipated to be or who are continuously employed on at least a half-time basis for six months, shall be eligible for health insurance coverage subject to the provisions of the Agreement.

(b) Where the State establishes a seasonal position for six months or more, the appointee to that position shall not have his/her service intentionally broken solely for the purpose of rendering that employee ineligible for health insurance coverage.

(c) Should a seasonal employee who attained health insurance coverage eligibility leave the payroll and then be rehired subsequently, the employee shall retain eligibility for health insurance coverage upon rehire without application of a six-month waiting period, provided the employee was not off the payroll more than six months. The employee may continue his/her health insurance on a full pay basis for the period of time he/she is off the payroll.

§9.16 A permanent full-time employee who loses employment as a result of the abolition of a position on or

P 002478

after April 1, 1977, shall continue to be covered under the State Health Insurance Plan at the same contribution rate as an active employee for one year following such layoff or until reemployment by the State or employment by another employer, whichever first occurs.

§9.17 (a) A permanent full-time employee who is removed from the payroll due to an accepted work related injury or occupational condition shall remain covered under the State Health Insurance Plan and the terms as defined in §11.5 of this Agreement.

(b) A permanent full-time employee who is removed from the payroll due to a controverted work related injury or occupational condition will have the right to apply for a health insurance premium waiver. The appropriate agency will be responsible to inform the employee of his or her right to apply for the waiver prior to the employee meeting the eligibility requirements for the waiver of premium.

§9.18 (a) Continued health insurance coverage will be provided for the unremarried spouse and other eligible dependents of employees who die in State service under circumstances under which they are eligible for the accidental death benefit or for weekly cash workers' compensation benefits under the same conditions prescribed in Section 165 of the Civil Service Law for dependents of a deceased employee who was at the time of death an employee at a correctional facility having individual and dependent coverage at the time of death and where death occurred as a result of injuries during the period from September 9 through 13, 1971.

(b) If an employee is granted a service-connected disability retirement by a retirement or pension plan or system administered and operated by the State of New York, the State will continue the health insurance of that

40

P 002479

employee on the same basis as any other retiring employee, regardless of the duration of the employee's service with the State.

§9.19 (a) The unremarried spouse and otherwise eligible dependent children of an employee, who retires after April 1, 1979, with ten or more years of active State service and subsequently dies, shall be permitted to continue coverage in the health insurance program with payment at the same contribution rates as required of active employees for the same coverage.

(b) The unremarried spouse and otherwise eligible dependent children of an active employee, who dies after April 1, 1979 and who, at the date of death, was vested in the Employees' Retirement System and who was at least 45 years of age and was within 10 years of the minimum retirement age shall be permitted to continue coverage in the health insurance program with payment at the same contribution rates as required of active employees for coverage.

§9.20 (a) Employees covered by the State Health Insurance Plan have the right to retain health insurance after retirement upon completion of ten years of service. However, in recognition of the forthcoming changes to the Government Accounting Standards Board (GASB) requirements, both the State and CSEA recognize the need to address the inequity of providing employees who serve the minimum amount of time necessary for health insurance in retirement with the same benefits as career employees. Prior to the expiration of this contract CSEA and the State shall, through the Joint Committee process, develop a proposal to modify the manner in which employer contributions to retiree premiums are calculated.

(b) An employee who is eligible to continue health insurance coverage upon retirement is entitled to a sick

P 002480

leave credit to be used to defray any employee contribution toward the cost of the premium. The basic monthly value of the sick leave credit shall be calculated according to the procedures in use on March 31, 1988. However, employees retiring on or after January 1, 1989 may elect an alternative method of applying the basic monthly value of the sick leave credit.

Employees selecting the basic sick leave credit may elect to apply up to 100 percent of the calculated basic monthly value of the credit towards defraying the required contribution to the monthly premium during their own lifetime. If employees who elect that method predecease their eligible covered dependents, the dependents may continue to be covered, but must pay the applicable dependent survivor share of the premium.

Employees selecting the alternative method may elect to apply only up to 70 percent of the calculated basic monthly value of the credit toward the monthly premium during their own lifetime. Upon the death of the employee, however, any eligible surviving dependents may also apply up to 70 percent of the basic monthly value of the sick leave credit toward the dependent survivor share of the monthly premium for the duration of the dependents' eligibility. The State has the right to make prospective changes to the percentage of credit to be available under this alternative method for future retirees as required to maintain the cost neutrality of this feature of the plan.

The selection of the method of sick leave credit application must be made at the time of retirement, and is irrevocable. In the absence of a selection by the employee, the basic method shall be applied.

§9.21 Effective on the date of execution of this Agreement, an employee retiring from State service may

42

P 002481

delay commencement or suspend his/her retiree health coverage and the use of the employee's sick leave conversion credits indefinitely, provided that the employee applies for the delay or suspension, and furnishes proof of continued coverage under the health care plan of the employee's spouse, or from post retirement employment.

§9.22 Joint Committee on Health Benefits

(a) The State and CSEA agree to continue the Joint Committee on Health Benefits.

(b) The State shall seek the appropriation of funds by the Legislature to support committee initiatives and to carry out the administrative responsibilities of the Joint Committee in the amount of $500,000 in each year of the Agreement.

(c) The Joint Committee on Health Benefits shall work with appropriate State agencies to make mutually agreed upon changes in the Plan benefit structure through such initiatives as:

(1) The annual HMO Review Process;

(2) The ongoing review and oversight of the Managed Mental Health and Substance Abuse Treatment Program;

(3) The development and implementation of a Program for Managed Medical Care through a panel of preferred hospital and/or medical care providers;

(4) The continuation of the Benefits Management Program, HealthCall, and annual review of the list of procedures requiring Prospective Procedure Review.

(5) The Joint Committee on Health Benefits will work with the State and medical carrier to solicit and contract with credentialed radiological providers to provide mammography screening, according to the American Cancer Society's medical protocols, at the work site and/or predetermined location. Reimbursement will be provided in accordance with the participating provider

P 002482

program, subject to the $5 diagnostic copayment.

(6) The continuation of the ambulatory surgery benefit and monitoring of participating centers. The Joint Committee on Health Benefits will work with the State to oversee the solicitation by the medical/surgical/basic medical carrier of Ambulatory Surgical Centers in bordering states and in those states where retirees commonly reside.

(7) The continuation of the Home Care Advocacy Program (HCAP) and the ongoing review of services offered.

(8) The Joint Committee will review the impact of Domestic Partner coverage under the Empire Plan upon completion of 12 months' experience.

(d) The Joint Committee's area of review and counsel shall include but not be limited to the following areas:

(1) Development of health benefit communication programs related to the consumption of health care services provided under the Plan.

(2) The Joint Committee on Health Benefits will work with the State and Empire Plan carriers to address the need to consolidate the various telephonic requirements enrollees must adhere to and other plan resources to which enrollees have access. Effective July 1, 1995, or as soon as practicable thereafter, there will be a centralized telephone number which, in turn, will direct calls to the appropriate program/benefit administrator for benefit approval, referral and/or assistance.

(3) Development, as appropriate in conjunction with the carriers, of revised benefit booklets, descriptive literature and claim forms.

(e) The Joint Committee shall work with appropriate State agencies to review and oversee the various health plans available to employees represented by CSEA.

(f) The Joint Committee on Health Benefits shall work

44

P 002483

with appropriate State agencies to monitor future employer and employee health plan cost adjustments.

(g) The Joint Committee shall be provided with each carrier rate renewal request upon submission and be briefed in detail periodically on the status of the development of each rate renewal.

(h) The State shall require that the insurance carriers for the State Health Insurance Plan submit claims and experience data reports directly to the Joint Committee on Health Benefits in the format and with such frequency as the Committee shall determine.

(i) The Joint Committee will be responsible for the annual review of participating providers. The Joint Committee shall investigate and, where feasible, take appropriate action to recruit additional providers in geographic and specialty areas determined by the Committee to be deficient.

(j) The Joint Committee shall continue to sponsor the agency health insurance administrator training program.

(k) The Joint Committee shall study recurring subscriber complaints and make recommendations for the resolution of such complaints.

(l) The Joint Committee on Health Benefits shall meet within 14 days after a request to meet has been made by either side.

(m) The Joint Committee shall study and address other issues and concerns brought to the attention of the Committee that impact the accessibility, quality and costs of health care for employees covered by this Agreement.

§9.23 Appropriate descriptive material relating to any changes in benefits shall be distributed to each State agency for internal distribution prior to the effective date of the change in benefit. The State shall take all steps necessary to provide revised health insurance booklets to

45

every employee as soon as possible. The Joint Committee on Health Benefits shall provide review and counsel on the development of the revised booklets.

§9.24 The confidentiality of individual subscriber claims shall not be violated. Except as required to conduct financial and claims processing audits of carriers and coordination of benefit provisions, specific individual claims data, reports or summaries shall not be released by the carrier to any party without the written consent of the individual, insured employee or covered dependent.

§9.25 The Comprehensive Study of the State's Employee Health Benefits Structure concluded that the Empire Plan had been generally well managed. However, given the current trends seen by other similarly situated employers, significant opportunities exist to improve the quality of care provided to employees while reducing the cost of that care. In recognition of the recommendations provided by the Study, the State will develop the Empire Plan medical care component into a program to access comprehensive managed medical care, through the establishment of networks of preferred participating providers, including primary care physicians, specialists, hospitals, centers of excellence, and other allied health care providers, such as labs, urgent care centers, ambulatory surgery centers, and home care providers. The hospital component of the Empire Plan and the Managed Mental Health and Substance Abuse Program will remain in place. In addition to services provided through the Plan's managed care networks, enrollees will have access to or have freedom of choice to use out-of-network providers, subject, however, to an annual $350 non-network deductible per enrollee, $350 per covered spouse and $350 for one or all dependent children, and a maximum payment of 75 percent of R&C charges up to

46

P 002485

$2,000,000 per person, per lifetime. A separate 48-hour annual deductible will be required before private duty nursing services are covered. The annual deductible will increase on each successive January 1, by a percentage amount equal to the percentage increase in the medical care component of the CPI-W for the period July 1 through June 30 of the preceding year, not to exceed $25 in any one plan year.

The Joint Committee on Health Benefits will work with the State in the implementation of this benefit. This shall include development of a mutually agreed upon program design including benefit levels and active participation in the selection of the vendor(s), if any.

This "Point-of-Service" plan will be implemented on January 1, 1997, or as soon as practicable thereafter. A special option transfer will take place if implementation is not scheduled for the beginning of a new plan year following a regularly scheduled option transfer period.

## ARTICLE 10
### Attendance and Leave
#### §10.1 Holiday Observance

(a) An employee who is entitled to time off with pay on days observed as holidays by the State as an employer shall be granted compensatory time off when any such holiday falls on a Saturday; provided, however, that employees scheduled or directed to work on any such Saturday may receive additional compensation in lieu of such compensatory time off in accordance with Section 7.14 of this Agreement. The State may designate a day to be observed as a holiday in lieu of such holiday which falls on Saturday.

(b) The following holidays will be observed by all employees within this unit eligible to observe holidays

P 002486

renegotiated. During the course of any reopened negotiations any provision of this Agreement not affected by such reopener shall remain in full force and effect.

### ARTICLE 51
### APPROVAL OF THE LEGISLATURE

IT IS AGREED BY AND BETWEEN THE PARTIES THAT ANY PROVISION OF THIS AGREEMENT REQUIRING LEGISLATIVE ACTION TO PERMIT ITS IMPLEMENTATION BY AMENDMENT OF LAW OR BY PROVIDING THE ADDITIONAL FUNDS THEREFORE, SHALL NOT BECOME EFFECTIVE UNTIL THE APPROPRIATE LEGISLATIVE BODY HAS GIVEN APPROVAL.

### ARTICLE 52
### Duration of Agreement

The term of this Agreement shall be from April 2, 1995 to April 1, 1999.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be signed by their respective representatives on August 1, 1995.

P 002580

**THE EXECUTIVE BRANCH OF THE STATE OF NEW YORK**

**James F. Gill**
Acting Director, Governor's Office of Employee Relations

**Jerry J. Dudak**
Deputy Director, Contract Negotiations and Administration

**Allen C. DeMarco**
Deputy Director and Chief Negotiator

**Christopher F. Eatz**
Assistant Director

**Walter J. Pellegrini**
General Counsel

**Richard J. Dautner**
Deputy Counsel

**John A. Arrighi**
Deputy Director of Research

**Ed Cedilotte**
Assistant Director of Health Benefits

P 002581

**Team Members:**

Mary Ackley
John Burke
Gwen Chattman
John Conoby
Christopher Dammer
Deborah Dammer
Louis DeSol
Louis Fazzone
Charles Frisbee
Lawrence Gallagher
James Gifford
Margaret Harrigan
Robert Hoffmeister

Willard Keane
Robert Kennedy
Carol Kurst
Dorothy Mace
Richard Martin
Richard McDowell
Rebecca Meyers
Lorraine Nicholas
James Rulison
Ellen Schusterson
Charles Thompson
Charles Vejvoda
Diane Wagner

143                    P 002582

**THE CIVIL SERVICE EMPLOYEES
ASSOCIATION, INC., LOCAL 1000,
AFSCME, AFL-CIO**

**Danny Donohue**
President

**Ross D. Hanna**
Director of Contract Administration, Chief Negotiator

**James Hennerty**
Deputy Director of Contract Administration

**Mary Masterson,**
Deputy Director of Contract Administration

**Denise L. Plunkett**
Staff Secretary

**Team Members:**
Diane Lucchesi, Chair
Barbara DeSimone
Mary Pat Fox
Wilma Hasser
Tom Moylan
Claudette Sullivan
Grace Wynn

P 002583