# Exhibit 8

# AGREEMENT

**BETWEEN**

**THE CIVIL SERVICE**

**EMPLOYEES ASSOCIATION, INC.**

**and**

**THE STATE OF NEW YORK**

# Administrative
# Services Unit



Local 1000, AFSCME, AFL-CIO



 3

**1991-1995**

P 002258

# AGREEMENT
# BETWEEN
# THE CIVIL SERVICE
# EMPLOYEES
# ASSOCIATION, INC.
# AND
# THE STATE OF NEW
# YORK
# ADMINISTRATIVE
# SERVICES UNIT
# 1991-1995

P 002260

# ADMINISTRATIVE SERVICES UNIT AGREEMENT

Agreement made by and between the Executive Branch of the State of New York (the "State") and The Civil Service Employees Association, Inc. ("CSEA").

## ARTICLE 1
### Recognition

**§1.1** The State, pursuant to the certification of the Public Employment Relations Board, recognizes CSEA as the exclusive representative for collective negotiations with respect to salaries, wages, hours and other terms and conditions of employment of employees serving in positions in the Administrative Services Unit and similar positions hereafter created. The terms "employee" or "employees" as used in this Agreement shall mean only employees serving in positions in such unit and shall include seasonal employees where so specified.

## ARTICLE 2
### Statement of Policy and Purpose

**§2.1** It is the policy of the State to continue harmonious and cooperative relationships with its employees and to ensure the orderly and uninterrupted operations of government. This policy is effectuated by the provisions of the Public Employees' Fair Employment Act granting public employees the rights of organization and collective representation concerning the determination of the terms and conditions of their employment.

**§2.2** The State and CSEA now desire to enter into an agreement reached through collective negotiations which will have for its purposes, among others, the following:

(a) To recognize the legitimate interests of the

6                    P 002267

and moving expenses upon transfer, reassignment or promotion (under Section 202 of the State Finance Law and the regulations thereunder) or for reimbursement for travel and moving expenses upon initial appointment to State service (under Section 204 of the State Finance Law and the regulations thereunder) shall be entitled to payment at the rates provided in the rules of the Director of the Budget 9 NYCRR Part 155.

## ARTICLE 9
### Health Insurance

§9.1 The State shall continue to provide all the forms and extent of coverage as defined by the contracts in force on March 31, 1991 with the State's health insurance carriers unless specifically modified by this Agreement.

§9.2 The Empire Plan shall include medical/surgical coverage through use of participating providers who will accept the Plan's schedule of allowances as payment in full for covered services. Except as noted below, benefits will be paid directly to the provider at 100 percent of the Plan's schedule not subject to deductible, co-insurance, or annual lifetime maximums.

(a) Office visit charges by participating providers will be subject to a $5 copay per covered individual. Office visit charges by participating providers for well child care will be excluded from the office visit copays.

(b) All covered outpatient surgery procedures performed by a participating provider during a visit will be subject to a $5 copay.

(c) All covered diagnostic/laboratory services performed by a participating provider during a visit will be subject to a $5 copay.

(d) All covered outpatient radiology services performed by a participating provider during a visit will be subject to a $5 copay.

P 002291

30

(e) Chronic care services for chemotherapy, radiation therapy, or hemodialysis will be excluded from the office visit copayment.

(f) The office visit, surgery, outpatient radiology, and diagnostic/laboratory copayments may be applied against the major medical copayment maximum, but they will not be considered covered expenses for major medical payment.

(g) Charges for outpatient services covered by the hospital contract, including emergency room services, will be subject to a $15 copayment per outpatient visit, for such service received on or after July 1, 1991. The copayment for covered services for the treatment of alcohol/substance abuse will be $5. The $15 hospital outpatient copayments will be waived for persons admitted to the hospital as an inpatient directly from the outpatient setting or for the following covered chronic care outpatient services; chemotherapy, radiation therapy, physical therapy or hemodialysis.

(h) The Empire Plan shall also include major medical coverage to provide benefits when non-participating providers are used. These benefits will be paid directly to enrollees according to reasonable and customary charges and will be subject to deductible, co-insurance, and calendar year and lifetime maximums.

(i) The Empire Plan participating provider schedule of allowances and the Major Medical Reasonable and Customary levels will be at least equal to those levels in effect on March 31, 1991.

(j) An annual evaluation and adjustment of Major Medical Reasonable and Customary charges will be performed according to the guidelines established by the Major Medical plan insurer.

(k) The State agrees to pay 90 percent of the cost of

P 002292

individual coverage and 75 percent of the cost of dependent coverage provided under the Empire Plan.

(l) The State agrees to continue to provide alternative Health Maintenance Organization (HMO) coverage and agrees to pay 90 percent of the cost of individual coverage and 75 percent of the cost of dependent coverage under each participating HMO.

(m) Effective July 1, 1991, the dual eligibility deduction plan shall be discontinued.

### §9.3 CSEA Empire Plan Enhancements

In addition to the basic Empire Plan benefits, the Empire Plan for CSEA enrollees shall include:

(a) Effective January 1, 1992, the major medical component deductible shall be $161 per enrollee, $161 per covered spouse and $161 for one or all dependent children.

(b) Effective January 1, 1992, the maximum enrollee co-insurance out-of-pocket expense under the major medical component shall be $776 per individual or family in any one year. For employees earning $18,494 or less in base salary on April 1, 1991, the $776 maximum co-insurance out-of-pocket expenses shall be reduced to a maximum of $500 in co-insurance per year, upon application to the Department of Civil Service for the reduction in copay, and upon submission of information showing that the employee is the head of household and sole wage earner in a family. Covered expenses for mental health and/or substance abuse treatment services are excluded in determining the $776/$500 maximum co-insurance limit.

(c) Employees 50 years of age or older shall be allowed reimbursement up to $125 once every two years towards the cost of a routine physical examination. Covered spouses 50 years of age or older shall be allowed reimbursement up to $75 once every two years towards the

P 002293

cost of a routine physical examination. These benefits shall not be subject to a deductible and co-insurance.

(d) The well-baby allowance under the major medical component shall be $100, not subject to deductible or co-insurance.

(e) The annual and lifetime maximum for each covered member under the major medical component shall be unlimited.

(f) Services for examinations and/or purchase of hearing aids shall be a covered major medical benefit and shall be reimbursed up to a maximum of $150 once every three years, not subject to deductible or co-insurance.

(g) The cost of injectable substances for routine pediatric immunizations shall be a covered benefit under the Empire Plan.

(h) Mastectomy brassieres prescribed by a physician, including replacements when it is functionally necessary to do so, shall be a covered benefit under the Empire Plan.

(i) The Pre-Tax Contribution Program will continue unless modified or exempted by the Federal Tax Code.

(j) The Participating Provider Panel shall continue to include selected Durable Medical Equipment Providers who shall offer durable medical equipment at discounted prices.

(k) An employee retiring from State service may delay commencement or suspend his/her retiree health coverage and the use of the employee's sick leave conversion credits for up to five years, provided that the employee applies for the delay or suspension, and furnishes proof of continued coverage under the health care plan of the employee's spouse, or from post retirement employment.

§9.4  The current Benefits Management Program, HealthCall, for CSEA employees enrolled in the Empire Plan, shall remain in effect unless modified by the Joint

P 002294

Committee on Health Benefits.

**§9.5** There shall be a waiting period of forty-two (42) days after employment before an employee shall be eligible for enrollment under the State's Health Insurance Program.

**§9.6** The State Health Insurance Plans' regulations shall continue to stipulate that the term employee means any person in the service of the State as employer whose regular work schedule is at least half-time per bi-weekly payroll period.

**§9.7** (a) Seasonal employees who are anticipated to be or who are continuously employed on at least a half-time basis for six months, shall be eligible for health insurance coverage subject to the provisions of the Agreement.

(b) Where the State establishes a seasonal position for six months or more, the appointee to that position shall not have his/her service intentionally broken solely for the purpose of rendering that employee ineligible for health insurance coverage.

(c) Should a seasonal employee who attained health insurance coverage eligibility leave the payroll and then be rehired subsequently, the employee shall retain eligibility for health insurance coverage upon rehire without application of a six-month waiting period, provided the employee was not off the payroll more than six months. The employee may continue his/her health insurance on a full pay basis for the period of time he/she is off the payroll.

**§9.8** Eligible employees in the State Health Insurance Plan may elect to participate in a federally qualified or State certified Health Maintenance Organization which has been approved to participate in the State Health Insurance Program by the Joint Committee on Health Benefits. Employees may change their health insurance option each

34

P 002295

year during the month of November, unless another period is mutually agreed upon by the State and the Joint Committee on Health Benefits.

If the rate renewals are not available by the time of the open transfer period, then the open transfer period shall be extended to assure ample time for employees to transfer.

**§9.9** (a) Continued health insurance coverage will be provided for the unremarried spouse and other eligible dependents of employees who die in State service under circumstances under which they are eligible for the accidental death benefit or for weekly cash workers' compensation benefits under the same conditions prescribed in Section 165 of the Civil Service Law for dependents of a deceased employee who was at the time of death an employee at a correctional facility having individual and dependent coverage at the time of death and where death occurred as a result of injuries during the period from September 9 through 13, 1971.

(b) If an employee is granted a service-connected disability retirement by a retirement or pension plan or system administered and operated by the State of New York, the State will continue the health insurance of that employee on the same basis as any other retiring employee, regardless of the duration of the employee's service with the State.

**§9.10** A permanent full-time employee who loses employment as a result of the abolition of a position on or after April 1, 1977, shall continue to be covered under the State Health Insurance Plan at the same contribution rate as an active employee for one year following such layoff or until reemployment by the State or employment by another employer, whichever first occurs.

**§9.11** (a) The unremarried spouse and otherwise eligible dependent children of an employee, who retires

P 002296

35

after April 1, 1979, with ten or more years of active State service and subsequently dies, shall be permitted to continue coverage in the health insurance program with payment at the same contribution rates as required of active employees for the same coverage.

(b) The unremarried spouse and otherwise eligible dependent children of an active employee, who dies after April 1, 1979, and who, at the date of death, was vested in the Employees' Retirement System, and who was at least 45 years of age and was within 10 years of the minimum retirement age, shall be permitted to continue coverage in the health insurance program with payment at the same contribution rates as required of active employees for the same coverage.

**§9.12** (a) Employees covered by the State Health Insurance Plan have the right to retain health insurance after retirement upon completion of ten years of service. However, in recognition of the forthcoming changes to the Government Accounting Standards Board (GASB) requirements, both the State and CSEA recognize the need to address the inequity of providing employees who serve the minimum amount of time necessary for health insurance in retirement with the same benefits as career employees. Prior to the expiration of this contract CSEA and the State shall, through the Joint Committee process, develop a proposal to modify the manner in which employer contributions to retiree premiums are calculated.

(b) An employee who is eligible to continue health insurance coverage upon retirement is entitled to a sick leave credit to be used to defray any employee contribution toward the cost of the premium. The basic monthly value of the sick leave credit shall be calculated according to the procedures in use on March 31, 1988. However, employees retiring on or after January 1, 1989, may elect

P 002297

an alternative method of applying the basic monthly value of the sick leave credit.

Employees selecting the basic sick leave credit may elect to apply up to 100 percent of the calculated basic monthly value of the credit towards defraying the required contribution to the monthly premium during their own lifetime. If employees who elect that method predecease their eligible covered dependents, the dependents may continue to be covered, but must pay the applicable dependent survivor share of the premium.

Employees selecting the alternative method may elect to apply only up to 70 percent of the calculated basic monthly value of the credit toward the monthly premium during their own lifetime. Upon the death of the employee, however, any eligible surviving dependents may also apply up to 70 percent of the basic monthly value of the sick leave credit toward the dependent survivor share of the monthly premium for the duration of the dependents' eligibility. The State has the right to make prospective changes to the percentage of credit to be available under this alternative method for future retirees as required to maintain the cost neutrality of this feature of the plan.

The selection of the method of sick leave credit application must be made at the time of retirement, and is irrevocable. In the absence of a selection by the employee, the basic method shall be applied.

### §9.13 Joint Committee on Health Benefits

(a) The State and CSEA agree to continue the Joint Committee on Health Benefits.

(b) The State shall seek the appropriation of funds by the Legislature to support committee initiatives and to carry out the administrative responsibilities of the Joint Committee in the amount of: 1991-92: (as expended); 1992-93: $575,000; 1993-94: $575,000; 1994-95: $575,000.

P 002298

(c) The Joint Committee shall work with appropriate State agencies to make mutually agreed upon changes in the Plan benefit structure through such initiatives as:

(1) The annual HMO Review Process;

(2) The development and implementation of the Managed Mental Health and Substance Abuse Care Program;

(3) The development and implementation of a program for Managed Medical Care through a panel of preferred hospital and/or medical care providers;

(4) The continuation of the Benefits Management Program, HealthCall, and annual review of the list of procedures requiring Prospective Procedure Review;

(5) The development and implementation of a program for mammography screening;

(6) The addition of ambulatory surgery centers to the Empire Plan;

(d) The Joint Committee's area of review and counsel shall include, but not be limited to, the following areas:

(1) Development of health benefit communication programs related to the consumption of health care services provided under the Plan.

(2) Development, as appropriate in conjunction with the carriers, of revised benefit booklets, descriptive literature and claim forms.

(e) The Joint Committee shall work with appropriate State agencies to review and oversee the various health plans available to employees represented by CSEA.

(f) The Joint Committee shall work with appropriate State agencies to monitor future employer and employee health plan cost adjustments.

(g) The Joint Committee shall be provided with each carrier rate renewal request upon submission and be briefed in detail periodically on the status of the development of each rate renewal.

P 002299

(h) The State shall require that the insurance carriers for the State Health Insurance Plan submit claims and experience data reports directly to the Joint Committee in the format and with such frequency as the Committee shall determine.

(i) The Joint Committee will be responsible for the annual review of participating providers. The Joint Committee shall investigate, and where feasible, take appropriate action to recruit additional providers in geographic and specialty areas determined by the Committee to be deficient.

(j) The Joint Committee shall continue to sponsor the Agency Health Insurance Administrator Training Program.

(k) The Joint Committee shall study recurring subscriber complaints and make recommendations for the resolution of such complaints.

(l) The Joint Committee shall meet within 14 days after a request to meet has been made by either side.

(m) The Joint Committee shall study and address other issues and concerns brought to the attention of the Committee that impact the accessibility, quality and costs of health care for employees covered by this Agreement.

§9.14 Appropriate descriptive material relating to any changes in benefits shall be distributed to each State agency for internal distribution prior to the effective date of the change in benefit. The State shall take all steps necessary to provide revised health insurance booklets to every employee as soon as possible. The Joint Committee on Health Benefits shall provide review and counsel on the development of the revised booklets.

§9.15 The State shall provide toll-free telephone service at the Department of Civil Service Health Insurance Section for information and assistance to employees and dependents on health insurance matters.

P 002300

**§9.16** (a) A permanent full-time employee who is removed from the payroll due to an accepted work-related injury or occupational condition shall remain covered under the State Health Insurance Plan and shall be treated the same as an employee on a preferred list.

(b) A permanent full-time employee who is removed from the payroll due to a controverted work-related injury or occupational condition will have the right to apply for a health insurance premium waiver. The appropriate agency will be responsible to inform the employee of his or her right to apply for the waiver prior to the employee meeting the eligibility requirements for the waiver of premium.

**§9.17** The confidentiality of individual subscriber claims shall not be violated. Except as required to conduct financial and claims processing audits of carriers and coordination of benefit provisions, specific individual claims data, reports, or summaries shall not be released by the carrier to any party without the written consent of the individual, insured employee, or covered dependent.

**§9.18 Mental Health and Substance Abuse Benefits**

Effective January 1, 1992, or as soon as practicable thereafter, the State will establish a revised program for managed care of psychiatric services, alcohol and other substance abuse treatment. The Joint Committee on Health Benefits will work with the State on the implementation of this initiative. This shall include review of the RFP, participation in the bidder conference, access and review of submitted proposals and recommendation of a vendor. The State reserves the right to make the final selection of the vendor after discussion with and consideration of CSEA's recommendation.

The Empire Plan shall provide comprehensive coverage for medically necessary mental health and substance abuse treatment services through a managed care network of

40

P 002301

preferred mental health and substance abuse care providers. In addition to the in-network care, limited non-network care will be available.

**Benefits shall be as follows:**

### IN-NETWORK BENEFIT
**Mental Health Coverage**

• Paid-in-full medically necessary hospitalization services and inpatient physician charges when provided by or arranged through the network;

• Outpatient care provided by or arranged through the network will be covered subject to a $15 per visit copay;

• Up to three visits for crisis intervention provided by, or arranged through, the network will be covered without copay.

**Alcohol and Other Substance Abuse Coverage**

• Paid in full medically necessary care for hospitalization or alcohol/substance abuse facilities when provided by or arranged through the network;

• Outpatient care provided by or arranged through the network will be subject to a $5 per visit copay.

**Benefit Maximums**

• Annual and lifetime dollar maximums for covered expenses will be at the same level as the major medical annual and lifetime dollar maximums;

• Medically necessary inpatient alcohol and substance abuse treatment will be limited to three stays per lifetime. However, the managed care vendor will review on an individual, case by case, basis the appropriateness of additional treatment and may approve coverage for such treatment if it can be demonstrated that significant improvement will occur.

P 002302

## NON-NETWORK BENEFIT

Medically necessary care rendered outside of the network will be subject to the following provisions:

• 30 inpatient days and 30 outpatient visits maximum per year for mental health treatment;

• Inpatient and outpatient reimbursement will be no greater than 50 percent of the in-network discounted fees;

• Inpatient deductible will be $2000 per year and the outpatient deductible will be $500 per year;

• No out-of-pocket maximum;

• Maximum dollar limit for medically necessary care provided by non-network providers for covered expenses will be $50,000 per calendar year and $100,000 lifetime;

• Medically necessary inpatient alcohol and substance abuse treatment will be limited to one stay per year and three stays per lifetime. There will be a maximum of 30 outpatient visits approved per calendar year.

Expenses applied against the deductible and copay levels indicated above will not apply against any deductible or copay levels or maximums under the major medical component of the Plan.

§9.19 Current and/or new enrollees opting for family coverage must provide the names of all covered dependents to the Plan administrator. In the case of covered newborn dependents, names shall be provided within 3 months of the date of birth. Additionally, the social security numbers of a covered spouse, if applicable, and/or dependent student(s) over the age of 19, if applicable, shall be provided to the Plan administrator in order to verify continued eligibility for family coverage and to facilitate coordination of benefits.

§9.20 The Comprehensive Study of the State's Employee Health Benefits Structure concluded that the

P 002303

Empire Plan had been generally well managed. However, given the current trends seen by other similarly situated employers, significant opportunities exist to improve the quality of care provided to employees while reducing the cost of that care. In recognition of the recommendations provided by the Study, the State will develop a program for managed medical care through the establishment of a panel of preferred hospital and medical care providers. The Joint Committee on Health Benefits will work with the State in the implementation of this benefit. This shall include development of a mutually agreed upon program design including benefit levels and active participation in the selection of the vendor.

## ARTICLE 10
## Attendance and Leave
### §10.1 Holiday Observance

(a) An employee who is entitled to time off with pay on days observed as holidays by the State as an employer shall be granted compensatory time off when any such holiday falls on a Saturday; provided, however, that employees scheduled or directed to work on any such Saturday may receive additional compensation in lieu of such compensatory time off in accordance with Section 7.14 of this Agreement. The State may designate a day to be observed as a holiday in lieu of such holiday which falls on Saturday.

(b) The following holidays will be observed by all employees within this unit eligible to observe holidays unless otherwise specified by mutual agreement between the parties:

P 002304

specified in such decision or having such effect shall be of no force and effect, but the remainder of this Agreement shall continue in full force and effect. Upon the issuance of such a decision or the issuance of a ruling having such effect of loss of Federal funds, then either party shall have the right immediately to reopen negotiations with respect to a substitute for such article, section or portion of this Agreement involved. The parties agree to use their best efforts to contest any such loss of Federal funds which may be threatened. In the event that the Legislature fails to implement Section 7.1, any or all articles may be reopened at the option of CSEA or the State, and renegotiated. In the event that any other article, section or portion of this Agreement fails to be implemented by the Legislature, then in that event, such article, section or portion may be reopened by CSEA or the State and renegotiated. During the course of any reopened negotiations any provision of this Agreement not affected by such reopener shall remain in full force and effect.

### ARTICLE 51
### APPROVAL OF THE LEGISLATURE
§51.1 IT IS AGREED BY AND BETWEEN THE PARTIES THAT ANY PROVISION OF THIS AGREEMENT REQUIRING LEGISLATIVE ACTION TO PERMIT ITS IMPLEMENTATION BY AMENDMENT OF LAW OR BY PROVIDING THE ADDITIONAL FUNDS THEREFORE, SHALL NOT BECOME EFFECTIVE UNTIL THE APPROPRIATE LEGISLATIVE BODY HAS GIVEN APPROVAL.

### ARTICLE 52
### Duration of Agreement
§52.1 The term of this Agreement shall be from April 1, 1991 to April 1, 1995.

P 002396

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be signed by their respective representatives on July 1, 1992.

**THE EXECUTIVE BRANCH OF THE STATE OF NEW YORK**

**Joseph M. Bress**
Director, Governor's Office of Employee Relations

**Jerry J. Dudak**
Deputy Director, Contract Negotiations and Administration

**Allen C. DeMarco**
Deputy Director and Chief Negotiator

**Marie D. Dukes**
Assistant Director

**Walter J. Pellegrini**
General Counsel

**James D. Brown**
Deputy Director of Research

**Nelson E. Carpenter**
Deputy Director of Health Benefits

**Team Members:**
Mary Ackley
John Burke
Gwen Chattman
Joseph Costello
Deborah Dammer
James Frezzell

P 002397

Robert Hoffmeister
Sheldon Kramer
Carol Kurst
Renee Miller
Lorraine Nicholas
Maureen Nyilis
Pamela Ogden
Louis Raffaele
Artis Reed
Philip Scott

**THE CIVIL SERVICE EMPLOYEES
ASSOCIATION, INC., LOCAL 1000,
AFSCME, AFL-CIO**

**Joseph E. McDermott**
President

**Ross D. Hanna**
Director of Contract Administration, Chief Negotiator

**James Hennerty**
Deputy Director of Contract Administration

**Denise L. Plunkett**
Staff Secretary

**Team Members:**
Mary Pat Fox
William McMahon
Claudette Sullivan
Wilma Hasser
Barbara A. Allen
Patricia A. Westerman
Donna Murray

P 002398