# Exhibit 9

# Agreement

BETWEEN
**THE CIVIL SERVICE EMPLOYEES ASSOCIATION, INC.**
AND
**THE STATE OF NEW YORK**

## Administrative Services Unit

 

1988-91



P 002111

# Agreement

BETWEEN
**THE CIVIL SERVICE EMPLOYEES ASSOCIATION, INC.**
AND
**THE STATE OF NEW YORK**

# Administrative Services Unit

1988-91

P 002112

# ADMINISTRATIVE SERVICES UNIT AGREEMENT

Agreement made by and between the Executive Branch of the State of New York (the "State") and the Civil Service Employees Association, Inc. ("CSEA").

## ARTICLE 1
### Recognition

§1.1 The State, pursuant to the certification of the Public Employment Relations Board, recognizes CSEA as the exclusive representative for collective negotiations with respect to salaries, wages, hours and other terms and conditions of employment of employees serving in positions in the Administrative Services Unit and similar positions hereafter created. The terms "employee" or "employees" as used in this Agreement shall mean only employees serving in positions in such unit and shall include seasonal employees where so specified.

## ARTICLE 2
### Statement of Policy and Purpose

§2.1 It is the policy of the State to continue harmonious and cooperative relationships with its employees and to ensure the orderly and uninterrupted operations of government. This policy is effectuated by the provisions of the Public Employees' Fair Employment Act granting public employees the rights of organization and collective representation concerning the determination of the terms and conditions of their employment.

§2.2 The State and CSEA now desire to enter into an agreement reached through collective negotiations which will have for its purposes, among others, the following:

(a) To recognize the legitimate interests of the employees

P 002118

**M/C Relocation Expenses**

During the term of this Agreement, employees in CSEA negotiating units who qualify for reimbursement for travel and moving expenses upon transfer, reassignment or promotion, (under Section 202 of the State Finance Law and the regulations thereunder), or for reimbursement for travel and moving expenses upon initial appointment to State service, (under Section 204 of the State Finance Law and the regulations thereunder), shall be entitled to payment at the rates provided in the rules of the Director of the Budget 9 NYCRR Part 155.

### ARTICLE 9
**Health Insurance**

§9.1 The State shall continue to provide all the forms and extent of coverage as defined by the contracts in force on March 31, 1988 with the State's health insurance carriers unless specifically modified by this Agreement.

§9.2 The Empire Plan shall include medical/surgical coverage through use of participating providers who will accept the Plan's schedule of allowances as payment in full for covered services. Except as noted below, benefits will be paid directly to the provider at 100% of the Plan's schedule not subject to deductible, coinsurance, or annual and lifetime maximums.

(a) Effective January 1, 1989, and thereafter, office visit charges by participating providers will be subject to a $5.00 copay per covered individual. Office visit charges by participating providers for well child care will be excluded from the office visit copays.

(b) Effective January 1, 1989, all covered outpatient surgery procedures performed by a participating provider during a visit will be subject to a $5.00 copay.

(c) Effective January 1, 1989, all covered diagnostic/laboratory services performed by a participating provider during a visit will be subject to a $5.00 copay.

(d) Effective January 1, 1989, all covered outpatient radiology services performed by a participating provider dur-

26

ing a visit will be subject to a $5.00 copay.

(e) The office visit, surgery, outpatient radiology, and diagnostic/laboratory copayment may be applied against the major medical copayment maximum but they will not be considered covered expenses for major medical payment.

(f) The Empire Plan shall also include major medical coverage to provide benefits when non-participating providers are used. These benefits will be paid directly to enrollees according to reasonable and customary charges and will be subject to deductible, coinsurance, and calendar year and lifetime maximums.

(g) The Empire Plan participating provider schedule of allowances and the major medical reasonable and customary levels will be at least equal to those levels in effect on March 31, 1988.

(h) The State agrees to pay 90 percent of the cost of individual coverage and 75 percent of the cost of dependent coverage provided under the Empire Plan.

(i) The State agrees to continue to provide alternative Health Maintenance Organization coverage (HMO) and effective January 1, 1989, agrees to pay 90 percent of the cost of individual coverage and 75 percent of the cost of dependent coverage under each participating HMO.

§9.3 CSEA Empire Plan Enhancements

In addition to the basic Empire Plan benefits, the Empire Plan for CSEA enrollees shall include:

(a) Effective January 1, 1989, the major medical component deductible shall be $130 per enrollee, $130 per covered spouse and $130 for one or all dependent children.

(b) The maximum enrollee coinsurance out-of-pocket expenses under the major medical component shall be $625 per individual and/or family in any year. For employees earning $16,695 or less in base salary on July 1, 1988, and $17,530 or less in base salary on April 1, 1989, and $18,494 or less in base salary on April 1, 1990, the $625 maximum coinsurance out-of-pocket expense shall be reduced to a maximum of $400 in coinsurance per year, upon application to the Department of Civil Service for the reduction in

27

such subdivision, certification shall be that the employee is the head of household and sole wage earner in a family. Covered expenses for outpatient treatment by a psychiatrist, psychologist or certified social worker are excluded in determining the $625 maximum copayment limit.

(c) Effective January 1, 1989, employees 50 years of age or older shall be allowed reimbursement up to $125 once every two years towards the cost of a routine physical examination. Covered spouses 50 years of age or older shall be allowed reimbursement up to $75 once every two years towards the cost of a routine physical examination. These benefits shall not be subject to a deductible and co-insurance.

(d) The well-baby allowance under the major medical component shall be $100, not subject to deductible or co-insurance.

(e) The annual and lifetime maximum for each covered member under the major medical component shall be unlimited.

(f) Services for examinations and/or purchase of hearing aids shall be a covered major medical benefit and shall be reimbursed up to a maximum of $150 once every three years.

(g) Effective January 1, 1989, the cost of injectable substances for routine pediatric immunizations shall be a covered benefit under the Empire Plan.

(h) Effective January 1, 1989, mastectomy bras prescribed by a physician, including replacements when it is functionally necessary to do so, shall be a covered benefit under the Empire Plan.

(i) Where both spouses are employees of the State, at the option of the couple, one family policy may be elected with the State paying the entire monthly cost of the family coverage. In the event of termination of employment, death, disability or retirement of one of the employees or divorce, continued coverage will be made available to the parties for individual or family policy without evidence of insura-

P 002139

bility, regardless of the date of the next open transfer period.

§9.4 Effective January 1, 1989, a new mandatory precertification program will replace the current Empire Plan preadmission and second surgical opinion programs. Precertification will be required for all non-emergency or non-maternity inpatient confinements and all surgical procedures except those performed in the doctor's office. The patient's physician will have the initial responsibility to contact the Precertification Center. Should the physician refuse to contact the Center, the patient will contact the Center, and the Center will contact the physician. The Center will determine whether surgery, if needed, should be done on an outpatient basis, and whether a second opinion on the need for surgery is required. The physician, patient and hospital will receive written confirmation of the findings. Written notice shall be sent within 48 hours of the initial contact with the Precertification Center.

Admissions not precertified, either because of failure to request precertification or because the inpatient setting is deemed inappropriate by the Plan, will be paid subject to a $250 hospital deductible. In these instances retroactive review of services received shall be performed. For each day or days deemed inappropriate for an inpatient setting an additional $100 deductible shall be incurred by the enrollee. Enrollees shall have the right to appeal the imposition of the $250 hospital deductible and/or penalties.

§9.5 Effective June 1, 1988, there shall be a waiting period of forty-two (42) days after employment before an employee shall be eligible for enrollment under the State's Health Insurance Program.

§9.6 The State Health Insurance Plans' regulations shall continue to stipulate that the term employee means any person in the service of the State as employer whose regular work schedule is at least half-time per biweekly payroll period.

§9.7(a) Seasonal employees who are anticipated to be or who are continuously employed on at least a half-time ba-

P 002140

coverage subject to the provisions of the Agreement.

(b) Where the State establishes a seasonal position for six months or more, the appointee to that position shall not have his/her service intentionally broken solely for the purpose of rendering that employee ineligible for health insurance coverage.

(c) Should a seasonal employee who attained health insurance coverage eligibility leave the payroll and then be rehired subsequently, the employee shall retain eligibility for health insurance coverage upon rehire without application of a six-month waiting period, provided the employee was not off the payroll more than six months. The employee may continue his/her health insurance on a full pay basis for the period of time he/she is off the payroll.

§9.8 Eligible employees in the State Health Insurance Plan may elect to participate in a federally qualified or State certified Health Maintenance Organization which has been approved to participate in the State Health Insurance Program by the Joint Committee on Health Benefits. Employees may change their health insurance option each year during the month of November, unless another period is mutually agreed upon by the State and the Joint Committee on Health Benefits.

If the rate renewals are not available by the time of the open transfer period, then the open transfer period shall be extended to assure ample time for employees to transfer.

§9.9(a) Continued health insurance coverage will be provided for the unremarried spouse and other eligible dependents of employees who die in State service under circumstances under which they are eligible for the accidental death benefit or for weekly cash workers' compensation benefits under the same conditions prescribed in Section 165 of the Civil Service Law for dependents of a deceased employee who was at the time of death an employee at a correctional facility having individual and dependent coverage at the time of death and where death occurred as a result of injuries during the period from September 9 through 13, 1971.

P 002141

(b) If an employee is granted a service-connected disability retirement by a retirement or pension plan or system administered and operated by the State of New York, the State will continue the health insurance of that employee on the same basis as any other retiring employee, regardless of the duration of the employee's service with the State.

§9.10 A permanent full-time employee who loses employment as a result of the abolition of a position on or after April 1, 1977, shall continue to be covered under the State Health Insurance Plan at the same contribution rate as an active employee for one year following such layoff or until reemployment by the State or employment by another employer, whichever first occurs.

§9.11(a) The unremarried spouse and otherwise eligible dependent children of an employee, who retires after April 1, 1979, with ten or more years of active State service and subsequently dies, shall be permitted to continue coverage in the health insurance program with payment at the same contribution rates as required of active employees for the same coverage.

(b) The unremarried spouse and otherwise eligible dependent children of an active employee, who dies after April 1, 1979 and who, at the date of death, was vested in the Employees' Retirement System and who was at least 45 years of age and was within 10 years of the minimum retirement age shall be permitted to continue coverage in the health insurance program with payment at the same contribution rates as required of active employees for the same coverage.

§9.12(a) Employees added to the payroll and covered by the State Health Insurance Plan have the right to retain health insurance after retirement upon completion of ten years of service.

(b) Effective January 1, 1989, an employee who is eligible to continue health insurance coverage upon retirement is entitled to a sick leave credit to be used to defray any employee contribution toward the cost of the premium. The

31

basic monthly value of the sick leave credit shall be calculated according to the procedures in use on March 31, 1988. However, employees retiring on or after January 1, 1989 may elect an alternative method of applying the basic monthly value of the sick leave credit.

Employees selecting the basic sick leave credit may elect to apply up to 100% of the calculated basic monthly value of the credit toward defraying the required contribution to the monthly premium during their own lifetime. If employees who elect that method predecease their eligible covered dependents, the dependents may continue to be covered, but must pay the applicable dependent survivor share of the premium.

Employees selecting the alternative method may elect to apply up to 70% of the calculated basic monthly value of the credit toward the monthly premium during their own lifetime. Upon the death of the employee, however, any eligible surviving dependents may also apply up to 70% of the basic monthly value of the sick leave credit toward the dependent survivor share of the monthly premium for the duration of the dependents' eligibility. The State has the right to make prospective changes to the percentage of credit to be available under this alternative method for future retirees as required to maintain the cost neutrality of this feature of the Plan.

The selection of the method of sick leave credit application must be made at the time of retirement, and is irrevocable. In the absence of a selection by the employee, the basic method shall be applied.

§9.13 Joint Committee on Health Benefits

(a) The State and CSEA agree to continue a Joint Committee on Health Benefits. The Committee shall consist of at least 4 representatives selected by CSEA and 4 representatives selected by the State.

(b) The State shall seek the appropriation of funds by the Legislature to support committee initiatives and to carry out the administrative responsibilities of the Joint Committee in the amount of: 1988-89: $500,000; 1989-90: $550,000;

P 002143

(c) The Joint Committee shall work with appropriate State agencies to review and oversee the various health plans available to employees represented by CSEA.

(d) The Joint Committee's area of review and counsel shall include but not be limited to the following areas:

(1) Development of health benefit communication programs related to the consumption of health care services provided under the Plan.

(2) Development, as appropriate in conjunction with the carriers, of revised benefit booklets, descriptive literature and claim forms.

(3) Design of a claims envelope to collect and track major medical bills.

(e) The Joint Committee will be responsible for the annual review of participating providers. The Joint Committee shall investigate and where feasible, take appropriate action to recruit additional providers in geographic and specialty areas determined by the Committee to be deficient. The Participating Provider Panel shall be expanded to include, but not be limited to, selected Durable Medical Equipment providers who shall offer durable medical equipment at discounted prices.

(f) The HMO review process shall be continued.

(g) The State shall require that the insurance carriers for the State Health Insurance Plan submit claims and experience data reports directly to the Joint Committee on Health Benefits in the format and with such frequency as the Committee shall determine.

(h) The Joint Committee shall be provided with each carrier rate renewal request upon submission by each carrier, and the Joint Committee shall be briefed on a quarterly basis by the carriers of any trends and/or developments that may impact the costs of the Empire Plan.

(i) The Joint Committee shall work to contract with a qualified organization(s) to perform all reviews of hospital services — precertification, concurrent and retrospective review(s); the second surgical consultation program;

33

Inpatient and outpatient psychiatric care; substance addiction treatment; and medical case management under the Empire Plan.

(1) The Joint Committee shall work with appropriate State agencies to conduct an extensive and thorough review and analysis of current plan administration and benefit plan design and utilization. Recommendations on ways to improve the effectiveness of either area will be solicited from appropriate State agencies and external sources. A major focus of the study will be hospital, physician and other provider practice patterns which affect utilization levels and subsequently impact employer and employee costs.

The State shall seek the appropriation of funds by the Legislature for fiscal year 1988-89 to support this comprehensive plan study.

(j) The Joint Committee on Health Benefits shall meet within 14 days after a request to meet has been made by either side.

(k) The Joint Committee shall continue to sponsor the agency health insurance administrator training program.

(l) The Joint Committee shall study recurring subscriber complaints and make recommendations for the resolution of such complaints.

(m) The Joint Committee shall study the feasibility of implementing a Bonus/Incentive Program for enrollees that identify and report erroneous and/or fraudulent provider charges.

(n) The Joint Committee shall study and if agreed upon, offer a Flexible Spending Account to cover applicable premium, deductible and copayment expenses.

(o) The Joint Committee shall study and address other issues and concerns brought to the attention of the Committee that impact the accessibility, quality and costs of health care for employees covered by this Agreement.

§9.14 Effective January 1, 1989, the ambulatory surgery procedures outlined in the Memorandum of Understanding dated November 18, 1982, will be covered to the same extent as all other covered surgical procedures under both

All participating provider and medical portions of the Empire Plan.

§9.15 Outpatient Hospital Care: The Empire Plan hospital contract shall continue to require that emergency care for sudden onset of an illness be given within 24 hours after the first appearance of the symptoms of the illness and that emergency care for an accident must be given within 72 hours of the accident. Payment for such care will be made when there is a sudden, unexpected onset of a medical condition and immediate care is necessary to prevent what could reasonably be expected to result in either placing your life in jeopardy or serious impairment to your bodily functions.

§9.16 Appropriate descriptive material relating to any changes in benefits shall be distributed to each State agency for internal distribution prior to the effective date of the change in benefit. The State shall take all steps necessary to provide revised health insurance booklets to every employee as soon as possible. The Joint Committee on Health Benefits shall provide review and counsel on the development of the revised booklets.

§9.17 The State shall provide toll-free telephone service at the Department of Civil Service Health Insurance Section for information and assistance to employees and dependents on health insurance matters.

§9.18(a) A permanent full-time employee who is removed from the payroll due to an accepted work related injury or occupational condition shall remain covered under the State Health Insurance Plan and shall be treated the same as an employee on a preferred list.

(b) A permanent full-time employee who is removed from the payroll due to a controverted work related injury or occupational condition will have the right to apply for a health insurance premium waiver. The appropriate agency will be responsible to inform the employee of his or her right to apply for the waiver prior to the employee meeting the eligibility requirements for the waiver of premium.

§9.19 The confidentiality of individual subscriber claims

35

shall not be violated. Except as required to conduct financial and claims processing audits of carriers and coordination of benefit provisions, specific individual claims data, reports or summaries shall not be released by the carrier to any party without the written consent of the individual, insured employee or covered dependent.

§9.20 Outpatient Psychiatric Benefits

The State and the Joint Committee on Health Benefits shall review the existing programs for psychiatric services and alcohol and drug abuse treatment coverage. A revised program of managed care for psychiatric, alcohol and substance abuse services, if approved by the Joint Committee, shall be implemented by the State and the Joint Committee on Health Benefits on January 1, 1989, or as soon as practical thereafter. Until this new program becomes effective, benefits for psychiatric services, alcohol and substance abuse services shall remain as defined by the contract in force on March 31, 1988, unless modified by this Agreement.

§9.21 Effective July 1, 1988, current and/or new enrollees opting for family coverage must provide the names of all covered dependents to the Plan Administrator. In the case of covered newborn dependents, names shall be provided within 3 months of the date of birth. Additionally, the social security numbers of a covered spouse, if applicable, and/or dependent student(s) over the age of 19, if applicable, shall be provided to the Plan administrator in order to verify continued eligibility for family coverage and to facilitate coordination of benefits.

§9.22 Effective January 1, 1989, Empire Plan coverage for ambulance services, other than when supplied by the admitting hospital, will be provided by major medical. Up to $50.00 of covered charges for professional ambulance services will be provided by major medical without deductible or coinsurance. Other coverage for ambulance service under major medical, in effect on March 31, 1988, will also continue.

P 002147

## ARTICLE 52

**Duration of Agreement**

§52.1 The term of this Agreement shall be from April 1, 1988 to March 31, 1991.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be signed by their respective representatives on June 2, 1988.

### THE EXECUTIVE BRANCH OF THE STATE OF NEW YORK

**Elizabeth D. Moore**
Director, Governor's Office of Employee Relations

**Nancy L. Hodes**
Executive Deputy Director

**Jerry J. Dudak**
Deputy Director, Contract Negotiations
 and Administration

**Theodore D. Chrimes III**
Assistant Director, Governor's Office of Employee
 Relations and Chief Negotiator

| | |
|---|---|
| **Joseph M. Bress**<br>General Counsel | **Team Members**<br>Mary Ackley<br>Steven Beditz |
| **Walter J. Pellegrini**<br>Deputy Counsel | Deborah Dammer<br>Marie Dukes<br>Allen Fine |
| **Margaret E. Doolin**<br>Deputy Director, Research | James Frezzell<br>Joyce Klein<br>Carol Kurst |
| **Gregory B. Reilly**<br>Assistant Director | Margaret Harrigan<br>Susan Van Buren<br>Sandra DeJohn,<br> Staff Secretary |

P 002226

**THE CIVIL SERVICE EMPLOYEES ASSOCIATION, INC.,
LOCAL 1000, AFSCME, AFL-CIO**

William L. McGowan
President

Ernest Rewolinski
Chief Negotiator

Francis A. Martello
Administrative Director, Field Operations

John A. Conoby
Deputy Director, Field Services

Marjorie E. Karowe
Chief Counsel

John J. Naughter, Jr.
Deputy Director for Contract Administration

William L. Blom
Director of Research

**Team Members**
Mary Pat Fox, Chairperson
Kathleen Fetzer, Vice-Chairperson
Cecile Ayres, Secretary
Jean Bailey
Elliot Bernstein
Madeline Dante
Marcia Grant
Carol Harvin
Elizabeth Kearney
Kathy Roma
Margaret Spinks
Portia Given, Staff Secretary
Kim Hytko, Coalition Secretary

P 002227