# Exhibit 10



# Agreement

BETWEEN
**THE STATE OF NEW YORK**
AND
**THE CIVIL SERVICE EMPLOYEES ASSOCIATION, INC.**

# Administrative Services Unit

 

1985-88



P 001953

# Agreement

BETWEEN
**THE STATE OF NEW YORK**
AND
**THE CIVIL SERVICE EMPLOYEES ASSOCIATION, INC.**

# Administrative Services Unit

1985-88

P 001955

# ADMINISTRATIVE SERVICES UNIT AGREEMENT

Agreement made by and between the Executive Branch of the State of New York (the "State") and The Civil Service Employees Association, Inc. ("CSEA").

## ARTICLE 1
**Recognition**

§1.1 The State, pursuant to the certification of the Public Employment Relations Board, recognizes CSEA as the exclusive representative for collective negotiations with respect to salaries, wages, hours and other terms and conditions of employment of employees serving in positions in the Administrative Services Unit and similar positions hereafter created. The terms "employee" or "employees" as used in this Agreement shall mean only employees serving in positions in such unit and shall include seasonal employees where so specified.

## ARTICLE 2
**Statement of Policy and Purpose**

§2.1 It is the policy of the State to continue harmonious and cooperative relationships with its employees and to ensure the orderly and uninterrupted operations of government. This policy is effectuated by the provisions of the Public Employees' Fair Employment Act granting public employees the rights of organization and collective representation concerning the determination of the terms and conditions of their employment.

§2.2 The State and CSEA now desire to enter into an agreement reached through collective negotiations which will have for its purposes, among others, the following:

(a) To recognize the legitimate interests of the employees of the State to participate through collective negotiations

P 001961

el and moving expenses upon initial appointment to State service, (under Section 204 of the State Finance Law and the regulations thereunder), shall be entitled to payment at the rates provided in the rules of the Director of the Budget, 9 NYCRR Part 138.

## ARTICLE 9
**Health Insurance**

§9.1(a) The State shall continue to provide all the forms and extent of coverage as defined by the contracts in force on March 31, 1985 with the State's health insurance carriers unless specifically modified by this Agreement.

(b) The State will continue coverage for birthing centers, home health care benefits, hospice and skilled nursing facility care as specified in the Memorandum of Understanding dated November 18, 1982.

§9.2(a) The State shall establish a new comprehensive statewide health insurance plan, the Empire Plan, which will replace the current Statewide Plan and GHI Option, effective on or before April 1, 1986. The Statewide Plan and GHI Option will cease to be available upon implementation of the new Empire Plan.

(b) The Empire Plan shall include hospital coverage to the same extent as defined by the Statewide Plan hospital contract in force on March 31, 1985.

(c) The Empire Plan shall include medical/surgical coverage through use of participating providers, who will accept the Plan's schedule of allowances as payment in full for covered services. In these cases, benefits will be paid directly to the provider at 100 percent of the Plan's schedule not subject to deductible, co-insurance or annual/lifetime maximums.

(d) The Empire Plan shall also include major medical coverage to provide benefits when non-participating providers are used. These benefits will be paid directly to enrollees according to reasonable and customary charges

28

P 001982

and will be subject to deductible, co-insurance, and calendar year and lifetime maximums.

(e) The Empire Plan participating provider schedule will be at least equal to the GHI participating provider payment schedule in effect immediately prior to the implementation of the Empire Plan. The Empire Plan Major Medical reasonable and customary levels will be at least equal to the Metropolitan Major Medical reasonable and customary levels in effect immediately prior to the implementation of the Empire Plan.

(f) The State agrees to pay 90 percent of the cost of individual coverage and 75 percent of the cost of dependent coverage provided under the Empire Plan.

(g) The State agrees to continue to provide alternative Health Maintenance Organization coverage (HMO) and agrees to pay equal dollar amounts per employee opting for coverage with a participating HMO as is paid towards the Empire Plan; however, such payment shall not exceed the actual cost of such optional coverages.

(h) Until contracts to provide the benefits of the Empire Plan are executed and the Plan is thus in effect, benefits and the State's percentage of contribution towards the cost of the Statewide Plan and equivalent dollar amounts towards the GHI and HMO Options, as defined by contracts in force on March 31, 1985, or modified herein will remain in effect. Enrollees of the Statewide Plan and GHI Option will be transferred to coverage under the new Empire Plan on its implementation date, unless such enrollees elect alternate coverage under a participating Health Maintenance Organization.

§9.3  CSEA Empire Plan Enhancements

In addition to the basic Empire Plan benefits, the Empire Plan for CSEA enrollees shall include:

(a) The major medical component deductible shall be $130

29

per individual in any year. The total family deductible shall not exceed $390 in any year.

(b) The maximum enrollee co-insurance out-of-pocket expenses under the major medical component shall be $625 per individual or family in any year. For employees earning $15,000 or less in base salary on April 1, 1986 and $15,900 or less in base salary on April 1, 1987, the $625 maximum co-insurance out-of-pocket expense shall be reduced to a maximum of $400 in co-insurance per year, upon application to the Department of Civil Service for the reduction in co-pay, and upon submission of information showing that the employee is the head of household and sole wage earner in a family. Covered expenses for outpatient treatment by a psychiatrist, psychologist or certified social worker are excluded in determining the $625 maximum co-payment limit.

(c) Employees 50 years of age or older shall be allowed reimbursement up to $100 per year towards the cost of a routine physical examination. Covered spouses 50 years of age or older shall be allowed reimbursement up to $50 per year towards the cost of a routine physical examination. These benefits shall not be subject to deductible or co-insurance.

(d) The well-baby allowance under the major medical component shall increase to $100, not subject to deductible or co-insurance.

(e) The annual maximum for each covered member under the major medical component shall increase from $100,000 to $1,000,000.

(f) Services for examinations and/or purchase of hearing aids shall be a covered major medical benefit and shall be reimbursed up to a maximum of $150 once every three years.

§9.4 The State shall implement a pre-hospital admission review program for Empire Plan enrollees prior to Janu-

30

P 001984

ary 1, 1987. The pre-admission review will incorporate the existing programs for second surgical consultation, pre-admission testing and ambulatory surgery. The pre-admission review program shall not apply to emergency or maternity admissions.

§9.5  The State shall implement a concurrent inpatient psychiatric review program for Empire Plan enrollees prior to January 1, 1987. Inpatient confinements for psychiatric care will be reviewed by psychiatric professionals to ensure that the treatment rendered is in the best interest of the patient.

§9.6  The State shall institute a voluntary medical case management program for Empire Plan enrollees prior to January 1, 1987. If requested by the patient, the program will review cases of catastrophic illness or injury and arrange for flexibility in payment by the Empire Plan to permit patient care which is most appropriate.

§9.7  There shall be a waiting period of twenty-eight (28) days after employment before a new employee shall be eligible for enrollment under the State's health insurance program.

§9.8  The State health insurance plans' regulations shall continue to stipulate that the term employee means any person in the service of the State as employer whose regular work schedule is at least half-time per biweekly payroll period.

§9.9(a)  Seasonal employees who are anticipated to be or who are continuously employed on at least a half-time basis for six months, shall be eligible for health insurance coverage subject to the provisions of the Agreement.

(b) Where the State establishes a seasonal position for six months or more, the appointee to that position shall not have his/her service intentionally broken solely for the purpose of rendering that employee ineligible for health insurance coverage.

P 001985

(c) Should a seasonal employee who attained health insurance coverage eligibility leave the payroll and then be rehired subsequently, the employee shall retain eligibility for health insurance coverage upon rehire without application of a six-month waiting period, provided the employee was not off the payroll more than three months. The employee may continue his/her health insurance on a full pay basis for the period of time he/she is off the payroll.

§9.10  After implementation of the Empire Plan, active employees may change from the Empire Plan to an available HMO or vice versa once each year during an open transfer period, to be established at the State's discretion. Transfers between HMOs and the Empire Plan will be permitted without regard to the employee's age or the number of previous transfers.

§9.11  Eligible employees in the State health insurance plan may elect to participate in a federally qualified or State certified Health Maintenance Organization (HMO) on the same basis specified for optional coverage under Civil Service Law, Section 167.1. If more than one HMO serves the same area, the State reserves the right to contract with only one such organization.

§9.12(a)  Continued health insurance coverage will be provided for the unremarried spouse and other eligible dependents of employees who die in State service under circumstances under which they are eligible for the accidental death benefit or for weekly cash workers' compensation benefits under the same conditions as prescribed in Section 165 of the Civil Service Law for dependents of a deceased employee who was at the time of death an employee at a correctional facility having individual and dependent coverage at the time of death and where death occurred as a result of injuries sustained during the period from September 9 through 13, 1971.

P 001986

(b) If an employee is granted a service-connected disability retirement by a retirement or pension plan or system administered and operated by the State of New York, the State will continue the health insurance of that employee on the same basis as any other retiring employee, regardless of the duration of the employee's service with the State.

§9.13  A permanent full-time employee who loses employment as a result of the abolition of a position on or after April 1, 1977 shall continue to be covered under the State health insurance plan at the same contribution rate as an active employee for one year following such layoff or until reemployment by the State or employment by another employer, whichever first occurs.

§9.14(a)  The unremarried spouse and otherwise eligible dependent children of an employee, who retires after April 1, 1979 with 10 or more years of active State service and subsequently dies, shall be permitted to continue coverage in the health insurance program with payment at the same contribution rates as required of active employees for the same coverage.

(b) The unremarried spouse and otherwise eligible dependent children of an active employee, who dies after April 1, 1979 and who, at the date of death, was vested in the Employees' Retirement System and who was at least 45 years of age and was within 10 years of the minimum retirement age shall be permitted to continue coverage in the health insurance program with payment at the same contribution rates as required of active employees for the same coverage.

§9.15  Employees added to the payroll and covered by the State health insurance plan have the right to retain health insurance coverage after retirement, upon completion of 10 years of State service.

§9.16  Joint Committee on Health Benefits

(a) The State and CSEA agree to continue a Joint Com-

P 001987

mittee on Health Benefits. The Committee shall consist of at least three representatives selected by CSEA, three representatives selected by the State and one impartial chairperson selected by the parties.

(b) The State shall seek the appropriation of funds by the Legislature to support committee initiatives and to carry out the administrative responsibilities of the Joint Committee, in the amount of: 1985-86: $400,000; 1986-87: $450,000; 1987-88: $500,000.

(c) The Joint Committee shall work with appropriate State agencies in a review and oversight capacity. The Committee's areas of review and counsel may include, but are not limited to:

(1) Development of health benefit communication programs related to the consumption of health care services provided under the Plan;

(2) Development of appropriate health insurance training programs for personnel offices of State agencies;

(3) Development, in conjunction with the carriers, of descriptive literature and claim forms;

(4) The study of recurring subscriber complaints and recommendations for the resolution of those complaints;

(5) The investigation and examination of other successful programs involving wellness, cost containment and alternative health care delivery systems.

(d) The Joint Committee on Health Benefits shall work with appropriate State agencies to review and oversee the implementation of the new Empire Plan of insurance for State employees and the programs for pre-hospital admission review, concurrent psychiatric review and voluntary medical case management, to be implemented pursuant to Sections 9.4, 9.5 and 9.6 of this Agreement.

(e) The Joint Committee on Health Benefits shall provide review and counsel on the development of revised benefit booklets for the Empire Plan.

P 001988

(f) The Joint Committee on Health Benefits shall meet within 14 days after a request to meet has been made by either side.

(g) The Joint Committee shall request administrative/technical assistance from appropriate State agencies and/or other sources deemed necessary and approved by the Joint Committee.

(h) The Joint Committee on Health Benefits shall establish methods and procedures for review of disputed claims.

(i) The Joint Committee shall implement a voluntary major medical pre-determination of benefit procedure.

(j) The State shall require that the insurance carriers for the State health insurance plan submit claims and experience data reports directly to the Joint Committee on Health Benefits in the format and with such frequency as the Committee shall determine.

(k) The Joint Committee shall be provided with each carrier rate renewal request upon submission by each carrier and the Joint Committee shall be briefed in detail periodically by the State on the status of rate negotiations with each carrier.

(l) The Joint Committee shall establish a "hold harmless" mechanism whereby an employee or covered dependent will not be penalized for what the insurance carrier may consider as an "unnecessary" hospital stay or treatment when the employee or the covered dependent has merely followed the instructions of his or her physician.

§9.17 Outpatient Hospital Care

Effective April 1, 1985, the requirement of the current hospital contract for the existing Statewide Plan and GHI Option that emergency care for sudden onset of an illness be given within 12 hours after the first appearance of the symptoms of the illness in order for coverage to be available will be changed to require such care to be given within 24 hours after the first appearance of the symptoms of the

P 001989

illness in order for coverage to be available. The 24 hour requirement will apply to the Empire Plan.

§9.18 Appropriate descriptive material relating to any changes in benefits shall be distributed to each State agency for internal distribution prior to the effective date of the change in benefit. The State shall take all steps necessary to provide revised health insurance booklets to every employee as soon as possible. The Joint Committee on Health Benefits shall provide review and counsel on the development of the revised booklets.

§9.19 The State shall provide toll-free telephone service at the Department of Civil Service Health Insurance Section for information and assistance to employees and dependents on health insurance matters.

§9.20(a) A permanent full-time employee who is removed from the payroll due to an accepted work related injury or occupational condition shall remain covered under the State health insurance plan and shall be treated the same as an employee on a preferred list.

(b) A permanent full-time employee who is removed from the payroll due to a controverted work related injury or occupational condition will have the right to apply for a health insurance premium waiver. The appropriate agency will be responsible to inform the employee of his or her right to apply for the waiver prior to the employee meeting the eligibility requirements for the waiver of premium.

§9.21 The State shall provide health insurance comparison information to employees, through State agencies, prior to the beginning of an open transfer period. If the comparison information is delayed for any reason, the transfer period shall be extended for a minimum of 30 calendar days beyond the date the information is distributed to the agencies. Employees transferring plans during a scheduled period but prior to the provision of the comparison data, may elect to further alter or rescind his or her health

plan transfer during the remainder of the open transfer period.

§9.22 The confidentiality of individual subscriber claims shall not be violated. Except as required to conduct financial and claims processing audits of carriers and coordination of benefit provisions, specific individual claims data, reports or summaries shall not be released by the carrier to any party without the written consent of the individual, insured employee or covered dependent.

§9.23 Outpatient Psychiatric Benefits

(a) The Statewide Plan shall provide payment of 80 percent of reasonable and customary charges up to $40 per visit to a maximum limit of $1,500 for the period April 1, 1985 to March 31, 1986, or the implementation date of the Empire Plan, whichever is earlier. Payment for outpatient psychiatric care for services rendered prior to April 1, 1985 will not be counted towards the $1,500 maximum benefit level.

(b) To encourage ready access to necessary and appropriate mental health services in times of crisis, but to discourage protracted use and overdependence of mental health treatment outpatient services for the treatment of mental and nervous conditions will be covered under the Empire Plan on/or before April 1, 1986, as follows:

(1) Crisis intervention coverage; per occurrence of crisis (sudden event requiring psychiatric intervention) up to three (3) visits will be paid in full up to $60 per visit, not subject to any major medical deductible or co-payment.

(2) Coverage for additional visits after such "crisis" intervention or for other visits not directly related to a recent/sudden crisis occurrence will also be provided subject to satisfaction of the Plan's major medical benefit deductible as follows:

(a) Up to ten (1-10) such visits will be covered at 80 per-

37

P 001991

cent of usual and customary charge not to exceed a maximum per visit payment of $48.

(b) If necessary, visits 11-30 will be covered with a maximum payment of $40 per visit.

(c) If necessary, additional visits after visit number 30 will be covered with a maximum payment of $30 per visit.

(d) Regardless of the level of benefits outlined above, provider statements as to the necessity of treatment will be required by the medical carrier for the Plan throughout the course of treatment. Only when this case-by-case review identifies the appropriateness of further treatment will continued coverage be available.

(e) Such outpatient psychiatric benefits shall not apply to the Empire Plan's major medical out-of-pocket annual maximum.

§9.24   When more than one family member is eligible to enroll for coverage under the State's health insurance plan, there shall be no more than one individual and dependent enrollment permitted in any family unit. However, when more than one family member is eligible to enroll for coverage under the State's health insurance plan, and there is coverage under family enrollment, expenses for medical care for a disabled dependent child, as defined by the insurance carrier, will be calculated as if both mother and father were enrolled for family coverage.

### ARTICLE 10
**Attendance and Leave**

§10.1 Holiday Observance

(a) An employee who is entitled to time off with pay on days observed as holidays by the State as an employer shall be granted compensatory time off when any such holiday falls on a Saturday, provided, however, that employees scheduled or directed to work on any such Saturday may receive additional compensation in lieu of such compensatory time off in accordance with Section 7.14 of this Agree-

P 001992

### ARTICLE 53
**Duration of Agreement**

§53.1 The term of this Agreement shall be from April 1, 1985 to March 31, 1988.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be signed by their respective representatives on June 11, 1985.

#### THE EXECUTIVE BRANCH OF THE STATE OF NEW YORK

Thomas F. Hartnett
Director, Governor's Office of Employee Relations

Nancy L. Hodes
Executive Deputy Director

Jerry J. Dudak
Deputy Director, Contract Negotiations
  and Administration

| | |
|---|---|
| Jacob S. Thomas<br>Assistant Director and<br>Chief Negotiator | Team Members:<br>Allen Fine<br>Richard J. Dautner<br>Deborah Ellis |
| Joseph M. Bress<br>General Counsel | Judith P. Hundley<br>Michael Lewsandowski<br>Dorothy Mace |
| Walter J. Pellegrini<br>Deputy Counsel | Ellen Mihok<br>Renee Miller<br>Dennis O'Brien<br>Mary Warloff |

THE CIVIL SERVICE EMPLOYEES ASSOCIATION,
INC., LOCAL 1000, AFSCME, AFL-CIO

William L. McGowan
President

Joseph E. McDermott
Executive Vice President

James W. Roemer, Jr.
Chief Counsel

John M. Carey
Administrative Director, Collective Bargaining

John A. Conoby
Collective Bargaining Specialist

Team Members
Betty Holt, Chairperson
Christine Carletta, Co-Chairperson
Sara Sievert, Secretary
Elliot Bernstein
Sarah Jackson
Lee Johnson
Dawn Lyman
Claire McGrath
Carole Peets
Barbara Reynolds
Dann Wood
Ann Worthy
Ellen Dolan, Staff Secretary

P 002074