# Exhibit 11

# Agreement

BETWEEN
**THE STATE OF NEW YORK**
AND
**THE CIVIL SERVICE**
**EMPLOYEES ASSOCIATION, INC.**

# Administrative
# Services Unit




1982-85

 3

P 001836

**ADMINISTRATIVE SERVICES UNIT**
**AGREEMENT**

Agreement made by and between the Executive Branch of the State of New York (the "State") and The Civil Service Employees Association, Inc. ("CSEA").

## ARTICLE 1

**Recognition**

§ 1.1  The State, pursuant to the certification of the Public Employment Relations Board, recognizes CSEA as the exclusive representative for collective negotiations with respect to salaries, wages, hours and other terms and conditions of employment of employees serving in positions in the Administrative Services Unit and similar positions hereafter created. The terms "employee" or "employees" as used in this Agreement shall mean only employees serving in positions in such unit and shall include seasonal employees where so specified.

## ARTICLE 2

**Statement of Policy and Purpose**

§ 2.1  It is the policy of the State to continue harmonious and cooperative relationships with its employees and to ensure the orderly and uninterrupted operations of government. This policy is effectuated by the provisions of the Public Employees' Fair Employment Act granting public employees the rights of organization and collective representation concerning the determination of the terms and conditions of their employment.

§ 2.2  The State and CSEA now desire to enter into an agreement reached through collective negotiations which will have for its purposes, among others, the following:

(a) To recognize the legitimate interests of the

7

P 001841

way for such employees to reach their work by car except over a toll bridge. CSEA agrees that the correction of the situation at this work location will not and cannot be used as a precedent to seek payment of fares or tolls at other work locations.

§ 8.4   Extended Travel

The State agrees to provide $20.00 additional travel expense reimbursement for each weekend to employees who are in overnight travel status provided they are in overnight travel status for at least 10 consecutive days at least 300 miles from their home and their official station.

§ 8.5   Use of Personal Vehicles

(a) When employees make available their personal vehicles to transport clients or residents in the care of the State, the State agrees to provide, subject to the rules and regulations of the Comptroller, a supplemental mileage allowance rate of seven cents per mile for the use of personal vehicles for those persons eligible for such allowance when authorized to transport clients or residents.

(b) When employees make available their personal vehicles to transport building or construction materials, the State agrees to provide, subject to the rules and regulations of the Comptroller, a supplemental mileage allowance rate of seven cents per mile for the use of personal vehicles when authorized to transport such materials.

## ARTICLE 9

**Health Insurance**

§ 9.1

(a) The State shall continue to provide all the forms and extent of coverage as defined by the contracts in force on March 31, 1982 with the State's health insurance carriers unless specifically modified by this Agreement.

(b) The State agrees to continue to pay 100 percent of

24

P 001858

the cost of individual coverage and 75 percent of the cost of dependent coverage provided under the Statewide Plan, subject, however, to the limitations of Section 9.10(c) of this Article.

(c) The State agrees to continue to provide the GHI and HMO (including HIP) options and agrees to pay the equal dollar amounts per employee opting to participate toward these options as paid towards the Statewide Plan; however, such payment shall not exceed the actual cost of such optional coverages.

(d) When more than one family member is eligible to enroll for coverage under the State's health insurance plan, there shall be no more than one individual and dependent enrollment permitted in any family unit.

§ 9.2 The State shall continue the Second Surgical Consultation Program and agrees to expand such program into other geographic areas of the State.

§ 9.3 Seasonal employees hired for an anticipated period of less than six months shall not be eligible for health insurance coverage.

§ 9.4 Active employees may change health insurance options once each year during an open transfer period, to be established at the State's discretion. Transfers from one health insurance option to another will be permitted without regard to the employee's age or the number of previous transfers.

§ 9.5 Eligible employees in the State Health Insurance Plan may elect to participate in a federally qualified health maintenance organization (HMO) on the same basis specified for optional coverage under Civil Service Law, Section 167.1. If more than one HMO serves the same area, the State reserves the right to contract with only one such organization.

§ 9.6 (a) Continued health insurance coverage will be provided for the unremarried spouse and other eligible

25

P 001859

dependents of employees who die in State service under circumstances under which they are eligible for the accidental death benefit or for weekly cash workers' compensation benefits under the same conditions as prescribed in Section 165 of the Civil Service Law for dependents of a deceased employee who was at the time of death an employee at a correctional facility having individual and dependent coverage at the time of death and where death occurred as a result of injuries sustained during the period from September 9 through 13, 1971.

(b) If an employee is granted a service-connected disability retirement by a retirement or pension plan or system administered and operated by the State of New York, the State will continue the health insurance of that employee on the same basis as any other retiring employee, regardless of the duration of the employee's service with the State.

§ 9.7 A permanent full-time employee who loses employment as a result of the abolition of a position on or after April 1, 1977 shall continue to be covered under the State Health Insurance Plan at the same contribution rate as an active employee for one year following such layoff or until reemployment by the State or employment by another employer, whichever first occurs.

§ 9.8 (a) The unremarried spouse of an employee, who retires after April 1, 1979 with ten or more years of active State service and subsequently dies, shall be permitted to continue coverage in the Health Insurance Program with payment at the same contribution rates as required of active employees.

(b) The unremarried spouse of an active employee, who dies after April 1, 1979 and who, at the date of death, was vested in the Employee's Retirement System and who was at least 45 years of age and was within ten years of the minimum retirement age shall be permitted to con-

26

P 001860

tinue coverage in the Health Insurance Program, with payment at the same contribution rates as required of active employees.

§ 9.9 Employees added to the payroll and covered by the State Health Insurance Plan have the right to retain health insurance coverage after retirement, upon the completion of ten years of State service.

§ 9.10 Joint Committee on Health Benefits

(a) The State and CSEA agree to continue a Joint Committee on Health Benefits. The Committee shall consist of at least three representatives selected by CSEA, three representatives selected by the State and one impartial Chairperson selected by the parties.

(b) The Joint Committee shall work with appropriate State agencies in a review and oversight capacity. The Committee's areas of review and counsel may include, but are not limited to:

(1) Examination of the cost/benefit of establishing a Mandatory Second Surgical Opinion Program for potential inclusion under the State's Health Insurance Program during the life of this Agreement;

(2) Establishment of quarterly reporting requirements for all carriers providing health benefit coverage;

(3) Analysis of appropriate claims and experience data on a quarterly basis with a particular concern for identifying and forestalling emerging inflationary increases in cost;

(4) Investigation of alternative methods of financing premium payments, including, but not limited to, coordination with benefits afforded by and contributions made to the benefit fund established pursuant to Article 23 of this Agreement to minimize expense for both the State and employees covered by the Plan;

(5) Development of Health Benefit Communication

27

P 001861

Programs related to the consumption of health care services provided under the Plan;

(6) Development of appropriate Health Insurance Training Programs for Personnel Offices of State agencies;

(7) Development, in conjunction with the carriers, of descriptive literature and claim forms;

(8) The study of recurring subscriber complaints and recommendations for the resolution of those complaints.

(c) The State shall not be solely responsible for absorbing increases in the cost of the Plan after July 1, 1982. The Joint Committee will monitor the cost experience of the Plan continued by Article 9.1 (a) of this Agreement and shall, if necessary:

(1) direct adjustments by the Statewide Plan carriers to benefits, deductible amounts and/or co-payment amounts prior to October 1, 1982 to offset further cost increases in the Plan. As necessary, the Joint Committee shall direct such carriers to make adjustments of the nature described above at regular intervals thereafter;

(2) adjust the employees' and/or the employer's share of the premium;

(3) place a monetary limit on the amount of the State's contribution;

(4) consider the cost of individual or dependent coverage which the employee must pay;

(5) make recommendations with respect to State contributions to the employee benefit fund established by Article 23 of this Agreement.

(d) The State shall appropriate the necessary funds to carry out the administrative responsibilities of the Joint Committee.

§ 9.11   Ambulance Payment

An allowance will be provided of up to $50 under Blue Cross for professional ambulance service to and/or from

28

P 001862

a hospital in connection with an in-patient admission. The coverage provided under the medical-surgical portion of the Statewide, or GHI option for ambulance service not covered under Blue Cross will remain unchanged.

§ 9.12   Chiropractic Care

Coverage for chiropractic care services will be provided only for conditions requiring manual manipulation of the spine to correct a subluxation that can be demonstrated by an X-ray or for services prescribed by a physician.

§ 9.13   Deductible

(a) The medical-surgical deductible shall be $75 per individual in any year. The total family deductible shall not exceed $225 in any year.

(b) The Common Accident Deductible shall be $75 per accident.

(c) Effective October 1, 1979, the carry-over deductible shall be $75 per covered individual.

§ 9.14   Doctor Visit Allowance

The doctor visit allowance under the GHI Option shall be $15.

§ 9.15   Medical-Surgical Maximums (Statewide Plan)

Annual—The annual maximum for each covered member for medical-surgical expense benefits shall be $25,000.

Lifetime—The lifetime maximum for each covered member for medical-surgical expense benefits shall be $250,000.

Out-of-Pocket—When a covered employee and/or covered dependents of the employee have incurred $2,000 of covered medical-surgical expenses in any calendar year, after the appropriate deductible has been met, future covered expenses under medical-surgical coverages in the same calendar year will be reimbursed on a 100 percent basis. Covered expenses for out-patient

29

P 001863

treatment by a psychiatrist or psychologist are excluded in determining the $2,000 limit.

§ 9.16   Maternity Coverage

(a) Medical expenses for maternity coverage shall be provided for employees, spouses and other dependents to the same extent as they are covered for other medical expenses.

(b) Charges by a physician for care of a newborn child will be recognized as a covered maternal expense under the medical-surgical coverage of the Statewide Plan or GHI Option, up to a maximum of $50 per newborn child.

§ 9.17   Coverage for voluntary sterilization will be recognized as a covered expense under the Statewide Plan or GHI Option.

§ 9.18   Out-Patient Mental and Nervous

Coverage for out-patient treatment by a psychiatrist or psychologist shall provide 80 percent of reasonable charges per visit, not to exceed $40 in benefits per visit, subject to a maximum of $1,500 in any calendar year and $3,000 during the lifetime of any covered employee or dependent. This benefit is provided through the medical-surgical coverage under the Statewide Plan and GHI Option.

§ 9.19   Employees 50 years of age or older enrolled in the Statewide Plan shall be allowed reimbursement up to $50 per year toward the cost of a routine physical examination as a medical-surgical benefit.

§ 9.20   Effective April 1, 1979, a "No-Fault Exclusion" shall be added to all State health coverage programs to prevent duplicative payments for medical expenses that are also covered and payable under No-Fault auto insurance policies.

§ 9.21   Alcoholism Treatment

Coverage for alcoholism treatment in rehabilitation facilities or hospitals certified by the State of New York or

30

P 001864

approved by JCAH shall be provided. Coverage shall include two-week post-natal coverage for any single confinement and up to six weeks annually. In addition, each covered individual may receive up to twenty (20) out-patient treatments annually. These benefits will be provided through the medical-surgical coverage under the Statewide Plan.

## ARTICLE 10

### Attendance and Leave

§ 10.1 Holiday Observance

(a) An employee who is entitled to time off with pay on days observed as holidays by the State as an employer shall be granted compensatory time off when any such holiday falls on a Saturday, provided, however, that employees scheduled or directed to work on any such Saturday may receive additional compensation in lieu of such compensatory time off in accordance with Section 7.14 of this Agreement. The State may designate a day to be observed as a holiday in lieu of such holiday which falls on Saturday.

(b) The following holidays will be observed by all employees within this unit eligible to observe holidays unless otherwise specified by mutual agreement between the parties:

1. New Year's Day
2. Lincoln's Birthday
3. Washington's Birthday
4. Memorial Day
5. Independence Day
6. Labor Day
7. Columbus Day
8. Veterans Day
9. Thanksgiving Day
10. Christmas Day
11. Employee to designate either Election Day or Martin Luther King Day*

---

* Such election to be made where circumstances permit, provided, however, that in the event that Martin Luther King Day is designated by the State Legislature as an official State holiday, both Election Day and Martin Luther King Day shall be observed as holidays.

31

P 001865

renegotiated. In the event that any other article, section or portion of this Agreement fails to be implemented by the Legislature, then in that event, such article, section or portion may be reopened by CSEA or the State and renegotiated. During the course of any reopened negotiations any provision of this Agreement not affected by such reopener shall remain in full force and effect.

## ARTICLE 53
### APPROVAL OF THE LEGISLATURE

§ 53.1 IT IS AGREED BY AND BETWEEN THE PAR-TIES THAT ANY PROVISION OF THIS AGREEMENT REQUIRING LEGISLATIVE ACTION TO PERMIT ITS IMPLEMENTATION BY AMENDMENT OF LAW OR BY PROVIDING THE ADDITIONAL FUNDS THEREFOR, SHALL NOT BECOME EFFECTIVE UN-TIL THE APPROPRIATE LEGISLATIVE BODY HAS GIVEN APPROVAL.

## ARTICLE 54
### Duration of Agreement

§ 54.1 The term of this Agreement shall be from April 1, 1982 to March 31, 1985.

103

P 001935

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be signed by their respective representatives on May 20, 1982.

THE EXECUTIVE BRANCH OF THE STATE OF NEW YORK

Meyer S. Frucher
———————————————————————————
Director, Governor's Office of Employee Relations

James B. Northrop
———————————————————————————
Executive Deputy Director

Thomas F. Hartnett
———————————————————————————
Deputy Director

Florence T. Frazer
———————————————————————————
Assistant Director

Sharon DiSarro
Deborah Ellis
Allen Fine
Carol Kurst
Michael Lewandowski
Lorraine Macey
Maurice Miller
Karen Osterhout

104

P 001936

THE CIVIL SERVICE EMPLOYEES ASSOCIATION
INC., LOCAL 1000, AFSCME AFL-CIO

William L. McGowan
President

James W. Roemer, Jr.
Counsel

John M. Carey
Administrative Director, Collective Bargaining

John A. Conoby
Collective Bargaining Specialist

Elaine Todd, Chairperson
Marie Romanelli, Co-Chairman
Pat Crandall, Secretary
Mary Ann Bentham
Elliot Bernstein
Thomas Byrne
Dolores Farrell
Betty Holt
Lee Johnson
Doris Josephson
Claire McGrath
Allen Mead
Elsie Yudin
Sue Sherrill

105

P 001937